OPINION
{ ¶ 1} Appellant, Roger R. Gau ("Gau"), was convicted of seven counts of rape, first-degree felonies in violation of R.C. 2907.02, following a jury trial in the Ashtabula County Court of Common Pleas. Gau was sentenced as follows: life imprisonment on counts one through five; three years imprisonment on counts six and seven with all sentences to be served concurrent to one another. Gau timely appeals these convictions. For the reasons that follow, we affirm.
{ ¶ 2} Gau was originally indicted on March 6, 2003 on twenty-one counts of rape in violation of R.C. 2907.02. The indictment was based on a pattern of incestuous sexual assaults perpetrated by Gau on his minor daughter ("the victim") over a period of time from January 1, 1996 through October 31, 2002. Gau pleaded not guilty to all counts. On May 3, 2004, the jury trial began. On May 5, 2004, the trial court dismissed the jury after the jury informed the court that it was unable to reach a verdict. The court failed to inquire as to whether the jury was able to reach a verdict on any of the twenty-one counts. In an attempt to remedy this error, on May 11, 2004, the trial court conducted an examination of the jury foreperson to determine whether the jury had been able to reach a decision as to any of the twenty-one counts. The foreperson advised the court that the jury did reach a tentative "not guilty" verdict as to five of the twenty-one counts. The foreperson advised, however, that she did not believe a final decision would have been unanimous as to these five counts or any other counts. Consequently, on May 13, 2004, the trial court declared a mistrial.
{ ¶ 3} On June 28, 2004, the state filed a motion to amend the original indictment. Gau objected to the amendment. On July 8, 2004, the trial court allowed the amendment. The amended indictment set forth seven counts of rape from January 1, 1996 through October 31, 2002 against Gau as opposed to the original twenty-one. Gau was brought to trial on the amended indictment before a jury on August 15, 2005. The jury found Gau guilty on all seven counts of rape as charged in the amended indictment. Gau was sentenced on November 7, 2005. Gau was sentenced to life imprisonment for counts one through five because the jury found that Gau purposely compelled the victim to submit by force. R.C. 2907.02(B). Gau was sentenced to three years imprisonment for counts six and seven. All sentences were ordered to run concurrent to one another.
{ ¶ 4} Gau's first assignment of error states as follows:
{ ¶ 5} "THE DEFENDANT WAS DENIED FEDERAL AND STATE DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN HE WAS CONVICTED ON EVIDENCE THAT WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE CONVICTIONS FOR THE OFFENSES FOR WHICH HE WAS INDICTED BY THE GRAND JURY."
{ ¶ 6} Although it is set forth in a single assignment of error, Gau essentially challenges his convictions on two grounds under his first assignment of error. First, Gau alleges that the trial court erred in allowing the amendment of the original indictment.
{ ¶ 7} Section 10, Article I of the Ohio Constitution states: "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury * * *." "This provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." State v. Headley (1983), 6 Ohio St.3d 475, 478.
{ ¶ 8} Crim.R. 7 bolsters the indictment requirements and provides for additional procedures pertaining to the indictment process. Specifically, Crim.R. 7(D) governs amendments to indictments and states in part: "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
{ ¶ 9} The original indictment set forth twenty-one counts of rape essentially delineated in four-month time periods. The amended indictment set forth seven counts of rape with each count covering a one-year period.1 "Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury." Headley, supra, at 478-479. It is under this premise that Gau claims the expansion of the time period for each count violates his constitutional rights.
{ ¶ 10} Gau compares the factual scenario of the underlying amended indictment to the amended indictment which was declared faulty inState v. Vitale (1994), 96 Ohio App.3d 695. However, this case is distinguishable from Vitale. In Vitale, the amended indictment added eight days to the specified date for the theft occurrence. See,Vitale, supra, at 699. This additional time period, without presentment to the grand jury, was in error because it expanded the date of the offense from a single date to a period beyond a week. Id. In the present case, Gau's amended indictment did not alter the essential terms of the original indictment. Gau's amendment did not reflect an increased range of dates or the addition of a new date. At all times, Gau was aware that the grand jury had indicted him on allegations of rape beginning with a series of on-going events commencing January 1, 1996 through October 31, 2002. The amendment did not 1. Each amended count covered a one-year period with the exception of the first count which alleged activity from January 1, 1996 through September 20, 1997 and the last count which only covered a one-month period from September 21, 2002 through October 31, 2002. change this. Where the original indictment is based on a pattern of conduct and the amended indictment charges that same pattern of conduct, it is not error to allow the amendment. State v. Griffin, 8th Dist. No. 80499, 2002-Ohio-4288, at ¶ 58, see, also, State v.Honeycutt, 2d Dist. No. 19004, 2002-Ohio-3490, at ¶ 16.
{ ¶ 11} Even the bill of particulars issued prior to the amendment remained consistent with the amended charges. A criminal defendant is entitled to a bill of particulars setting forth the facts which the state intends to prove in order to obtain a conviction for the offenses charged. State v. Miller (1989) 63 Ohio App.3d 479, 485. The bill of particulars for Gau's offenses stated: "The State of Ohio asserts that between the 1st day of January, 1996 and the 31st day of October, 2002, while in the City of Geneva-on-the-Lake, County of Ashtabula, and State of Ohio, Defendant, ROGER R. GAU, [sic] engaged in the on-going rape of a minor female, date of birth September 21, 1988." The state "* * * should be restricted in its proof to the indictment and the particulars as set forth in the bill." Miller, supra, at 485-486.
{ ¶ 12} The alteration of the time periods did not condemn the indictment process as the grand jury issued a true bill on the exact same charges and range of dates as the amended indictment. The evidence and facts as stated in the bill of particulars did not change. The only difference was the breakdown of the dates and the number of charges. In the first indictment, the State broke the dates down into four-month increments for a total of twenty-one counts. In the amended indictment, the time increments were longer but covered the same time periods for a total of seven counts. { ¶ 13} The bill of particulars, the original indictment and the amended indictment all cover the same time period — January 1, 1996 through October 31, 2002. Furthermore, all documents charged Gau with a pattern of sexual conduct constituting the rape of his daughter over a period of time. Therefore, we conclude that at all times Gau was aware of the charges presented against him as found by the grand jury. Where an amendment does not affect the accused's right to know the charges levied against him, it is proper to allow the amendment. State v. Strozier (Oct. 5, 1994), 2nd Dist. No. 14021, 1994 Ohio App. LEXIS 4656, *6. We do not agree with Gau that the amendment of the indictment was in error.
{ ¶ 14} Next, Gau challenges the convictions based on the sufficiency of the evidence. "'* * * "[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386, quoting Black's Law Dictionary, (6 Ed. 1990), 1433. Appellate review of the sufficiency of the evidence requires a court to determine whether or not the prosecution submitted evidence as to each element of the crime. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14. "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `a reviewing court [should] not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proved beyond a reasonable doubt.'" Id. (Citations omitted). A conviction based on insufficient evidence constitutes a denial of due process. Thompkins, supra, at 386.{ ¶ 15} Gau was convicted of five counts of rape in violation of R.C.2907.02(A)(1)(b) and two counts of rape in violation of R.C. 2907.02(2). R.C. 2907.02(A)(1)(b) states:
{ ¶ 16} "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies:
{ ¶ 17} " * * *
{ ¶ 18} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
{ ¶ 19} The victim testified at trial that her father's sexual attacks started when she was seven or eight years old. The victim testified that Gau's pattern of sexual assaults began when Gau entered her bedroom and digitally penetrated her. The victim testified that the next incident occurred when Gau had sexual intercourse with her. The victim stated this pattern of activity occurred more than one-hundred times. The victim further described the sexual abuse and testified that Gau would also "stick his tongue inside my private area." Following the victim's description of these events, the victim answered a series of questions where she acknowledged this pattern of sexual abuse continued without reprieve from the time she was seven or eight until she was twelve years of age. The victim then acknowledged that Gau's sexual abuse modified a bit when she reached age twelve and began menstruating. From that point on, the victim testified that Gau would no longer insert his penis into her vagina, but continued to assault the victim vis-a-vis the other means of sexual torment.
{ ¶ 20} Considering the evidence in a light most favorable to the prosecution, we do not agree with Gau that there was insufficient evidence to convict Gau of rape. Although Gau denied the occurrence of these sexual acts, there was sufficient evidence in the record from which the jury could conclude that Gau raped the victim repeatedly over a five-year period. Gau specifically claims there was no evidence of force produced at trial. For the first five counts of rape, force was not a required element because the victim was under the age of thirteen. R.C. 2907.02(A)(1)(b). As to the remaining two counts, the jury found that Gau purposely compelled the victim to submit by force or threat of force thereby mandating a life imprisonment term according to R.C.2907.02(B).
{ ¶ 21} The victim described various methods she employed to try and prevent the abuse. "I started wearing my clothes to bed * * * to try to make it harder * * * for him to be able to do things." In addition, the victim created physical barriers between herself and Gau. "I put the laundry, the dirty clothes and toys, even garbage on the floor * * * in front of my bed * * * around my room and in the hallway." As further evidence of force, the victim stated that her father would have to pull her legs apart to commit the offenses. The victim testified that she began attending church in 1999. Following her church attendance, the victim confronted her father. The victim described her confrontation with her father regarding the incidents and realized the gravity of the situation. "I told him that it was wrong * * * I told him to stop." According to the victim, Gau reacted by holding her hand over a lighter with full flame and advising his daughter that "bad little girls deserve to get burned." Gau also advised her that if she told anyone, he would burn her. Counts six and seven occurred in 2001 and 2002, after Gau's threats to burn his daughter if she revealed the abuse.
{ ¶ 22} This evidence, construed in a light most favorable to the prosecution, is sufficient to constitute force or the threat of force. "The element of force * * * is established if it is shown that the rape victim's will was overcome by fear or duress; force need not be overt and physically brutal." State v. Fowler (1985), 27 Ohio App.3d 149, at paragraph three of the syllabus. While the direct threat to burn the victim if she told anyone did not occur in conjunction with the act of rape itself, it did not occur within a vacuum and must be considered under the totality of the circumstances. That threat, combined with the victim's request for her father to stop and the victim's obvious reluctance and active prohibitory conduct constitutes force or the threat of force. Furthermore, Gau's position as the victim's father bolsters the element of force and cannot be ignored. See, State v.Wolfenberger (1958), 106 Ohio App. 322, 324. "* * * [W]here a woman is affected by terror or is in fear of great bodily injury and harm, brought into being by an accused, who has placed his victim within his power and control, intercourse under such circumstances without consent is rape, even though the victim might have used greater physical resistance or cried out, when it is shown that her will was overcome * * *." State v. Martin (1946), 77 Ohio App. 553, 554.
{ ¶ 23} Gau's first assignment of error is without merit.
{ ¶ 24} Gau's second assignment of error states:
{ ¶ 25} "THE DEFENDANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{ ¶ 26} Weight of the evidence is different than sufficiency of the evidence. A determination as to whether a conviction is supported by the weight of the evidence goes directly to believability. See,Schlee, supra, at *13. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * *.'"Thompkins, supra, at 387. (Citation omitted). When determining a challenge based on the manifest weight of the evidence, the reviewing court reviews the entire record, weighs the evidence, considers credibility and conflicts in the evidence and determines on those bases whether the jury lost its way. State v. Davis (1988),49 Ohio App.3d 109, 113; see, also, Schlee, supra, at *15.
{ ¶ 27} Gau claims the convictions are against the manifest weight of the evidence because there was no evidence of force presented. Despite Gau's claim that the record is devoid of any evidence of force, our review of the record reveals the element of force was established by the testimony of the victim as well as the general nature of the victim/perpetrator's relationship.
{ ¶ 28} In the present case, the evidence showed the victim told Gau to stop and created physical barriers in an attempt to prevent the attacks. In addition, the victim testified that Gau had to pull her legs apart to accomplish the rapes. Exhibit 1, admitted into evidence without objection, contains the report of Dr. Stephanie Dewar from the Tri-County Advocacy Center. Dr. Dewar conducted an examination of the victim following the report of sexual abuse. According to the doctor's report, Gau also restricted the victim by holding her still with his hands. Further evidence of force exposed in the record was Gau's reaction to the victim's confrontation. According to the victim, Gau advised the victim that "he was teaching [her] to protect [herself] against all the sickoes [sic] out there." Gau also threatened the victim that he would burn her if she told anyone and advised her that "bad little girls deserve to get burned." Clearly, this constitutes force. As previously stated in our discussion of Gau's first assignment of error, the element of force is satisfied by dominion and control over a victim such that the exercise of such dominion and control places the victim in fear of great bodily injury and harm. See, Martin, supra at syllabus, see, also, Fowler, supra at paragraph three of syllabus, see also,Wolfenberger, supra at 324.
{ ¶ 29} Parent and child incestuous relationship are a unique beast all to themselves. "The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."State v. Eskridge (1988), 38 Ohio St.3d 56, 59. (Citations omitted). The victim in this case was seven years of age when the abuse began. A child of such tender years is expected to yield to the commands of her parent and "every command contains an implicit threat of punishment for failure to obey." State v. Schaim (1992), 65 Ohio St.3d 51, 55. Although a simple pattern of incestuous conduct will not support a finding of force without additional evidence, there was substantial evidence of force produced at trial when viewed under the totality of the circumstances and specifically when viewed in light of the parent/child relationship between Gau and the victim. We therefore conclude that the evidence of force produced at trial could lead a reasonable juror to conclude that Gau had forcibly compelled his daughter to submit to the sexual acts, thereby constituting rape. The jury did not lose its way in their determination.
{ ¶ 30} Gau's second assignment of error is without merit.
{ ¶ 31} Gau's third assignment of error states:
{ ¶ 32} "THE DEFENDANT WAS DENIED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO AN ENTIRE SERIES OF LEADING QUESTIONS."
{ ¶ 33} Gau argues that the state's entire case was founded on the victim's testimony which was the product of a series of leading questions to which his legal counsel should have objected. Gau claims the trial counsel's failure to object to this series of questions constitutes ineffective assistance of counsel and violates hisSixth Amendment right.
{ ¶ 34} Ineffective assistance of counsel is determined under a two-prong analysis. Strickland v. Washington (1984), 466 U.S. 668. First, the performance must have fallen below an objective standard of reasonableness. State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph two of syllabus. Second, the deficient performance must have caused prejudice. Id. The burden is on the defendant to meet this two-pronged test. Strickland, supra at 687. In order to prove that prejudice occurred as a result of the inadequate performance of the legal counsel, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra at paragraph three of syllabus.
{ ¶ 35} There is a strong presumption that counsel's conduct falls within a reasonable legal strategy. Strickland, at 689. Decisions on strategy and trial tactics are generally granted a wide latitude of professional judgment. Id. It is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. Id.
{ ¶ 36} The leading questions characterized as ineffective assistance of counsel consist of a series of questions regarding the continuous pattern of sexual abuse perpetrated by Gau.
{ ¶ 37} "Q: Did it happen when you were eight or nine?
{ ¶ 38} "A: Yes.
{ ¶ 39} "Q: Was that between September 21, 1997, and September 20th of 1998?
{ ¶ 40} "A: Yes."
{ ¶ 41} This type of question and answer proceeded for the years 1999 through 2002.
{ ¶ 42} In general, leading questions are not appropriate on direct examination of a witness. Evid.R. 611(C). However, leading questions may be permitted when necessary to develop the testimony of a witness. Id. This exception is quite broad. State v. Lewis (1982), 4 Ohio App.3d 275,278. Due to the age of the witness and the subject matter, it was not unreasonable for the defense counsel to refrain from objecting to this type of questioning. A review of the record displays other more appropriate circumstances throughout the victim's testimony where Gau's defense counsel raised proper objections that were sustained by the trial court. Courts must presume that licensed attorneys are competent and the burden lies on the appellant to prove otherwise. State v.Klaus (July 7, 1989), 11th Dist. No. 13-038, 1989 Ohio App. LEXIS 2711, *7.
{ ¶ 43} Gau's characterization that this series of questions was the only evidence that established the offenses of rape is not accurate. The victim stated that Gau had raped her "easily over a hundred times." In addition, Dr. Stephanie Dewar testified that she met the victim in December 2002. Dr. Dewar's report, as well as her testimony, substantiated that Gau was the named perpetrator who committed multiple acts of sexual abuse on the victim over a period of years beginning when the victim was seven years old.
{ ¶ 44} Therefore, we conclude that the failure of Gau's trial counsel to object to the series of questions described above did not fall below an objective standard of reasonableness. Furthermore, even if the trial counsel's failure to object was deemed unreasonable, it was not prejudicial as there was additional evidence in the record to support the convictions for rape.
{ ¶ 45} Gau's third assignment of error is without merit.
{ ¶ 46} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.
WILLIAM M. O'NEILL, J., DIANE V. GRENDELL, J., concur.