[Cite as *State v. Pitra*, 2014-Ohio-2761.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 100284

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAKUB S. PITRA

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-572629

**BEFORE:**   McCormack, J., Jones, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   June 26, 2014

**ATTORNEYS FOR APPELLANT**

Robert Tobik
Cuyahoga County Public Defender

By:   Jeffrey Gamso
Assistant Public Defender
310 Lakeside Ave., Suite 200
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Carl Sullivan
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Jakub S. Pitra appeals from a judgment of the trial court that convicted him of burglary following a bench trial. On appeal, he claims that his trial counsel provided ineffective assistance of counsel and the trial court improperly admitted and considered certain evidence. Finding no merit to either claim, we affirm his conviction.

{¶2} Pitra's conviction of burglary stemmed from an incident where he, in the middle of the night, broke into a home where his girlfriend used to reside to retrieve his personal belongings. He was charged with aggravated burglary and possession of criminal tools. After he waived a jury trial, the matter was tried to the bench. At trial, the state presented three witnesses: the resident of the home, a friend of his who was with him the evening of the incident, and two police officers who responded to the burglary call.

## Trial Testimony

{¶3} The home's resident, Lindsey Carroll, is Pitra's girlfriend's cousin. Carroll testified that she resided in a rented home with her three young children. In the summer of 2002, her cousin who was Pitra's girlfriend, Heather Wilford, moved into her home. Pitra would come to the house and stay overnight "here and there." Carroll testified that she never gave Pitra a key to the house, and he did not come to the house when Wilford was not around. Wilford lived with her until March 5, 2013, when Wilford was arrested and sent to jail for a drug offense.

{¶4} Carroll testified that after Wilford's incarceration, Pitra continued to drive Wilford's vehicle, which belonged to Wilford's mother. Six days after Wilford went to jail and three days before the burglary incident, Wilford's mother came to her house with two police officers to retrieve the car key from Pitra. On that same occasion, Carroll told Pitra that he could not stay in the house anymore. She told him she would be "uncomfortable" with him in the house while Wilford was in jail.

{¶5} Carroll testified that Pitra returned the car key but no other keys that were also on Wilford's key chain. As a result, she went to Lowe's to purchase a new set of door knobs, one for the front door and one for the back door, as well as two dead bolts, and she installed them on her house. She also nailed the windows shut.

{¶6} Carroll testified that, on March 14, 2013, after she went to bed and sometime past midnight, she was awakened by rustling sounds coming from the kitchen area near the back door. When the noises became too loud to ignore, she called 911. The noises sounded like someone trying to open the windows and "banging at the front door." While she was on the phone with the 911 dispatcher, she heard a loud thud, "like someone fell in." She could also hear two people talking.

{¶7} Carroll testified that she was scared while on the 911 phone call and tried to be quiet. She hung up the phone a few times because she was afraid she would be heard by the intruder. She was still on the phone when the police arrived. Regarding Pitra's personal belongings left in her house, she testified that after Wilford went to jail, she

packed Wilford's and Pitra's belongings into bags and left them in Wilford's room upstairs.

{¶8} The defense attempted to elicit testimony from Carroll that Pitra lived in the house. To contradict her testimony that Pitra did not have permission to be in her house after Wilford went to prison, the defense introduced some letters she wrote to Wilford in prison. Carroll admitted writing letters to Wilford days before the incident, where she wrote "the cats are driving me crazy and Jake still has not come home," and "Jake was here when I woke up this morning. He's missing you and feels terrible about the situation you are in." Carroll explained, however, she wrote these letters to try to make Wilford feel better about her situation.

{¶9} Sarah Breitenbach testified that she became acquainted with Pitra and Wilford due to their drug use. She was with Pitra on the night of the incident. She drove Pitra to Carroll's house because "he had needed some things from his place where he was staying * * * ." After arriving, Breitenbach parked her car a few houses down and Pitra walked to the house alone. She waited in the car for five minutes and then Pitra opened the door to let her inside the house. They both went upstairs to a room where Pitra's belongings were. Breitenbach testified that Pitra was upset because his belongings were haphazardly thrown together; while they were still upstairs, the police came and Pitra went downstairs to answer the door.

{¶10} Officers David Fox and John Kazimer, who responded to the dispatch call, provided similar testimony regarding the incident. When they arrived at the house, they

walked around the house and observed at the side of the house a window that had yard items stacked up to it. That window was unlocked while the other windows appeared to be locked. Officer Kazimer walked to the door, and a man — Pitra — came from the upstairs to answer the door. The officers patted him down and found a knife and a set of brass knuckles on his person. The officers determined the unlocked window was the entrance point, because all the other windows had been nailed shut. The homeowner told the officers that Pitra did not live there and had no reason to be there.

{¶11} The defense did not present any witnesses. At the end of the state's case, the court granted Pitra's Crim.R. 29 motion for acquittal as to the aggravated burglary charge (a first-degree felony), and found him guilty of the lesser included offense of burglary (a fourth-degree felony). The court dismissed the charge of possessing criminal tools. For his conviction of burglary, Pitra received 18 months of community control sanctions.

**Appeal**

{¶12} Pitra was convicted of burglary as defined in R.C. 2911.12(B), which states "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person * * * is present or likely to be present." Trespass, in turn, is defined as a violation of R.C. 2911.21, which defines criminal trespassing as knowingly entering or remaining on the premises of another "without privilege to do so." R.C. 2911.21(A)(1). Furthermore, R.C. 2901.01(A)(12) defines "privilege" as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."

{¶13} On appeal, Pitra does not challenge the sufficiency or the weight of the evidence. Rather, he complains of ineffective assistance of by his trial counsel and improper admission and consideration of evidence by the trial court.

{¶14} To demonstrate an ineffective-assistance-of-counsel claim, a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Counsel's performance will not be deemed ineffective unless and until the performance is proven to have fallen

below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona*, 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001). Furthermore, decisions on strategy and trial tactics are generally granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶ 35, citing *Strickland*.

{¶15} Here, Pitra claims that his trial counsel provided ineffective assistance in failing to present the testimony of his girlfriend, Heather Wilford, who was the homeowner's cousin and lived in the house before she went to the prison. He claims her testimony would have shown he lived in the house and therefore did not commit burglary on March 15, 2013.

{¶16} Pitra argues that the letters from Carroll to Wilford were evidence that he lived in the house and his girlfriend would have provided "compelling" collaborating testimony showing that he had privilege to be in the house. He argues his counsel, in failing to call his girlfriend as a witness, provided ineffective assistance of counsel. His claim is without merit. It is purely speculative and conjectural that Wilford would testify Pitra resided in the house. In any event, any hypothetical testimony by her regarding a privilege of Pitra to be present in the house would have been contradicted by the homeowner, who testified that Pitra had no permission to be in her house on the night of the incident. For these reasons, counsel could not be faulted for not presenting Wilford as a witness. The first assignment of error is without merit.

{¶17} Under the second assignment of error, Pitra claims the trial court improperly admitted and considered the homeowner's testimony regarding her fearfulness during the incident. He argues her testimony about her fear was irrelevant and highly prejudicial, the improper admission and consideration of which warrants a reversal.

{¶18} "Relevant" evidence is defined by Evid.R. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible and irrelevant evidence is inadmissible. Evid.R. 402. Furthermore, pursuant to Evid.R. 403, relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶19} A trial court's determination on both the relevance of any evidence and the admissibility of that evidence under Evid.R. 403(A) is reviewed for an abuse of discretion. *State v. Allen*, 73 Ohio St.3d 626, 633, 653 N.E.2d 675 (1995). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶20} Here, the homeowner testified that she woke up to the sounds of someone rustling outside her house and then a loud thud, and that she was "really scared" when she called 911, fearful that the intruder may hear her. It simply defies logic and common sense for Pitra to argue that the homeowner's testimony regarding her fear during the burglary incident is irrelevant and "highly prejudicial." The trial court did not abuse its

discretion in determining the homeowner's fear to be relevant and not unfairly prejudicial under Evid.R. 401 and 403. Because the evidence was admissible, it was not improper for the trial court, as the trier of fact, to consider it. In any event, the defense did not object to the homeowner's testimony and therefore any claim of error is waived. The second assignment lacks merit.

{¶21} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR