[Cite as *State v. Hardy*, 2019-Ohio-4981.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                               No. 108262

v.                                      :

BRANDON HARDY,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 5, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-627534-A, CR-18-627941-A, CR-18-630306-A, and
CR-18-633801-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Denise J. Salerno, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Noelle A. Powell, Assistant Public Defender, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Brandon Hardy ("Hardy"), appeals from his 21-year sentence resulting from four separate criminal cases in which he pled guilty to drug possession, trafficking, attempting trafficking, carrying a concealed weapon,

having weapons while under disability, felonious assault, and child endangering. For the reasons set forth below, we affirm.

{¶ 2} In May 2018, Hardy was charged in two criminal cases. In Cuyahoga C.P. No. CR-18-627534-A, he was charged with trafficking, drug possession, carrying a concealed weapon, and possessing criminal tools. In Cuyahoga C.P. No. CR-18-627941-A, Hardy was charged with having weapons while under disability, improperly handling firearms in a motor vehicle, carrying a concealed weapon, trafficking, two counts of drug possession, and possessing criminal tools. Each of the counts in these two cases carried firearm and/or forfeiture specifications. In July 2018, Hardy was charged in Cuyahoga C.P. No. CR-18-630306-A with two counts of felonious assault and four counts of child endangering. The victim in this case is G.B. (d.o.b. 9/12/16), who is the son of Hardy's girlfriend at the time.[1] In October 2018, Hardy was charged in Cuyahoga C.P. No. CR-18-633801-A with drug possession and two counts of trafficking. Each of the counts in this case carried firearm and/or forfeiture specifications.

{¶ 3} Pursuant to a plea agreement, Hardy pled guilty in Case No. CR-18-627534 to an amended count of drug possession, with forfeiture specifications, and carrying a concealed weapon. The remaining counts were dismissed. In Case No. CR-18-627941, Hardy pled guilty to having a weapon while under disability, with forfeiture specifications, and trafficking, with forfeiture specifications. The

---

[1] G.B.'s mother was listed as a codefendant on the indictment and was charged with one count of child endangering. Mother pled no contest to the charge and was sentenced to nine months in prison. As of the date of this opinion, mother has not filed an appeal.

remaining counts were dismissed. In Case No. CR-18-630306, Hardy pled guilty to felonious assault and two counts of child endangering. The remaining counts were dismissed. In Case No. CR-18-633801, Hardy pled guilty to amended counts of trafficking and attempted trafficking, both with forfeiture specifications. The remaining count was dismissed. The trial court referred Hardy to the probation department for a presentence investigation report ("PSI") and set the matter for sentencing in November 2018.

{¶ 4} At the sentencing hearing, the trial court heard from the state, G.B.'s maternal grandfather and paternal grandmother, the guardian ad litem ("GAL"), defense counsel, and Hardy. The facts related to the child endangering case were placed on the record by the state. In June 2018, Parma police were called to Walmart after an off-duty police officer observed Hardy beating G.B., who was in the back seat of the car. G.B.'s mother was in the front passenger seat. When the officers arrived, Hardy was inside Walmart and G.B.'s mother was inside the car with G.B. The officer observed bruises all over G.B.'s face, legs, chest, back, and arms. G.B. also had cuts and what appeared to be burn marks on his arms. The left side of his face was blistering from what appeared to be some sort of burn. G.B. also had cuts and lacerations from the left side of his head across the top of his forehead to the right side of his head. Photographs of the injuries were admitted into evidence.

{¶ 5} The next day, G.B.'s mother went to the Cleveland Police Department and filed a report against Hardy. The mother reported that in one incident, Hardy

pressed the scissors into the skin on G.B.'s head while cutting G.B.'s hair. Photographs of the injuries depict slash marks running straight across G.B.'s head and inside of his ears. The mother also reported that an incident occurred at a car wash in Cleveland before the Walmart incident.

{¶ 6} During this incident, Hardy sprayed G.B. in the face and arm while he was power washing his van. This caused G.B.'s burned or torn off skin on the side of G.B.'s face and arm. The state had video of this incident. The state described the contents of the video to the trial court. The video depicts Hardy washing his van with the back door pulled open. He then pulls G.B. to the edge of the door and points the power washer into the car. G.B. was only about six inches away from the power washer and flinched back into the car when sprayed by Hardy. Shortly thereafter, Hardy is seen yanking G.B. out of the van and forcibly sitting him on the roof of the van. G.B. is seen crying and moving around. Hardy then pulled G.B. off of the roof and forcibly put him down on the ground. He picked up G.B., turned him upside down, raised G.B. over his head, and then shook G.B. up and down, imitating a slamming motion, but stopped short of hitting G.B.'s head to the ground.

{¶ 7} G.B.'s maternal grandfather spoke to the court at sentencing and asked the court to give Hardy the maximum sentence. G.B.'s GAL addressed the court through a letter. The GAL stated that this was the worst case of child abuse that she had ever seen, short of those children who did not survive the abuse. The GAL described that although G.B.'s wounds healed, he still wakes up at night with bad dreams and is seen to be very aggressive at times when playing. The GAL asked

the court to consider the impact that this case has had on G.B. and can still have in the future. The GAL asked the court to sentence Hardy separately from his other cases. The state agreed and asked the court to impose consecutive sentences. The state reasoned:

> For anybody to be able to treat a child, a 14-month old child in this manner who can't even talk yet, he's a danger to all people in this community.
>
> He's also selling methamphetamine putting the rest of the community in danger, walking around with guns. This is just a dangerous person who should not be in society. And for that the State is going to ask the Court to consider consecutive sentences commensurate with this crime, hopefully more on the higher end.

{¶ 8} After the state spoke, defense counsel addressed the court. Counsel advised that Hardy's family was in the courtroom. He then explained that:

> [w]hen I first got involved in this case, [Hardy] was charged with drug offenses and then the felonious assault case came up. Judge, there's no question that he's sorry for what he did. I've talked with him on many occasions, most recently yesterday and this morning, he has expressed to me he's very sorry for this. He's got a drug problem, Judge. And maybe that doesn't justify this, but if he weren't on drugs, if he weren't involved in drug activity, I'm sure this would not have happened. He's got to deal with it. He's going to deal with it, Judge. He just asks this Court to be fair to him knowing that — I know a lot of people come before this Court say they've got drug problems but he does have a serious one, but he's sober, he is sober now and he is sorry for his activity.

{¶ 9} Hardy's grandmother then addressed the court on Hardy's behalf. She stated that Hardy's mother and son died. She did not condone Hardy's actions, but acknowledged that he has a drug problem. Hardy spoke on his own behalf, apologizing for his actions. He stated, "I know they was out of line. I apologize to the family, to [G.B.] I apologize to the Court. And that's it, your Honor."

**{¶ 10}** The court then sentenced Hardy to consecutive terms of imprisonment for a total of 21 years in prison. The court sentenced Hardy to 18 months in Case No. CR-18-627534; two years, plus one year for the gun specification in Case No. CR-18-627941; 15 years in Case No. CR-18-630306; and 18 months in Case No. CR-18-633801.

**{¶ 11}** Hardy now appeals, raising the following single assignment of error for review:

<u>Assignment of Error</u>

[Hardy] received ineffective assistance of counsel at his sentencing hearing.

**{¶ 12}** Hardy seeks to vacate his sentence. He does not argue that the record fails to support the trial court's findings or that his sentence is contrary to law. Rather, he argues that he received ineffective assistance of counsel at sentencing because defense counsel did not fully address his problems. Hardy contends that defense counsel failed to present the following mitigating evidence to reduce the severity of his sentence: Hardy's drug problem and the traumatic events listed in Hardy's PSI — the death of his mother and his son, his history of mental illness, and the fact that his father is unknown.

**{¶ 13}** In order to establish a claim of ineffective assistance of counsel, Hardy must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial court proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

{¶ 14} "'The presentation of mitigating evidence is a matter of trial strategy,' *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 189, even if counsel's chosen strategy proves unsuccessful, *State v. Frazier*, 61 Ohio St.3d 247, 255, 574 N.E.2d 483 (1991)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 304; *see also State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025 (8th Dist.). "'[D]ecisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers.'" *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 6, quoting *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 19, citing *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶ 35, and *Strickland*. A reviewing court, therefore, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound * * * strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 15} In the instant case, Hardy was referred for a PSI. The mitigating factors identified by Hardy were before the court in the PSI. At the sentencing hearing, Hardy's substance abuse problems and familial history were discussed by

Hardy's grandmother. Defense counsel also discussed Hardy's substance abuse problems. Given that the mitigating factors were already before the court in the PSI and brought to the court's attention at the sentencing hearing, Hardy has not shown a reasonable probability that the outcome of his sentencing would have been different. *Vinson* at ¶ 38. Moreover, as the court stated in its sentencing colloquy:

> [R.C.] 2929.14(C)(4) requires a trial court to engage in a three-step analysis when imposing consecutive sentences. First, the trial court has to find that consecutive sentences are necessary to protect the public from future crime as well as to punish the offender. And certainly in this case, notwithstanding the four files involved in this proceeding, the defendant does have a prior criminal history and I do believe that given the injuries in this case to a 14-month old child, consecutive sentences are not disproportionate to the seriousness of the conduct and to the danger that this individual poses to the public. And given the four cases, many of which happened while he was already out on bail, he committed one or more of the offenses while awaiting trial or sentencing, and certainly I do believe that consecutive sentences with respect to Case Number 630306 would not demean the seriousness of the charges in this case.

{¶ 16} In light of the foregoing, we cannot say defense counsel was deficient or that Hardy's sentence would have been different if defense counsel prepared a mitigation report.

{¶ 17} Accordingly, the sole assignment of error is overruled.

{¶ 18} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR