[Cite as *State v. Schwartz*, 2014-Ohio-4299.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0076** |
| BENJAMIN R. SCHWARTZ, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas.
Case No. 2013 CR 00125.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellee).

*Jonathan P. Jennings*, 223 West Main Street, Ravenna, OH  44266 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}    Appellant, Benjamin R. Schwartz, appeals his May 20, 2013 conviction in the Portage County Court of Common Pleas for importuning, in violation of R.C. 2907.07(B) & (F), a fifth-degree felony.  For the reasons that follow, we affirm the judgment of the trial court.

{¶2}    In order to be closer to Kent State University, where he was a student, appellant moved into the home of a friend's mother in Kent, Ohio, a few months before

the relevant events in this case. The mother has three children who live at home: a son (appellant's friend) and two daughters, ages 13 and 16.

{¶3} On February 15, 2013, the mother's 13-year-old daughter, "E.K.," invited her friend, "Victim A," over to her home. The two 13-year-old girls planned to attend a party together later that evening. Upon arriving at the house, E.K. introduced Victim A to appellant. It was the first time Victim A and appellant had met.

{¶4} Before she was permitted to attend the party later that evening, E.K. had to clean the kitchen. While E.K. was cleaning the kitchen, appellant and Victim A went to the home's basement to watch television. In the basement, appellant asked Victim A whether she knew how to wrestle and if she would like to learn. Appellant and Victim A began to wrestle on the basement's floor. Victim A testified at trial that while she was wrestling, appellant touched her breasts and tried to feel under her pants.

{¶5} E.K. then briefly came down to the basement. Once E.K. returned upstairs, Victim A testified that appellant positioned himself on top of her and began humping her, with "[h]is penis touching my butt." Victim A also testified that appellant "started making out" with her.

{¶6} E.K. then texted Victim A that it was time to get ready for the party. E.K. and Victim A got prepared for the party and were given a ride to the party. While at the party, E.K. arranged for several girls, including Victim A and Victim B, to spend the night at her house.

{¶7} E.K.'s mother arrived at the party around midnight to give E.K., Victim A, Victim B, and three other girls a ride back to her home. All the girls who arranged to spend the night at E.K.'s were in eighth grade and either 13 or 14 years old. Upon

2

returning home, E.K. introduced Victim B to appellant. It was the first time Victim B and appellant had met. Appellant handed his cell phone to Victim B, so that the two could exchange phone numbers.

{¶8} The six girls planned to all sleep in E.K.'s room. Some of the girls slept in E.K.'s bed, while others slept in sleeping bags on the floor. E.K., Victim A, and Victim B testified that appellant was apparently instructed by E.K.'s mother to spend the night with the girls in E.K.'s bedroom to ensure they did not attempt to leave the house.

{¶9} Appellant and Victim B exchanged text messages while the other girls in the room began falling asleep. Victim B testified that appellant sent her a text stating he was going to go sleep in the living room because the floor was uncomfortable. Victim B responded saying that she might do the same. Victim B then went to the living room where, a few minutes later, she was joined by appellant.

{¶10} In the living room, appellant and Victim B continued to exchange text messages. Victim B testified that appellant asked her whether she "would * * * like to learn" how to perform oral sex. Victim B also testified that she was encouraged to show appellant her breasts and that "while my shirt was up, he went forward and touched me." Victim B further testified that appellant had her perform oral sex on him. After the alleged oral sex, Victim B began to cry; appellant left the living room and retreated to his room in the basement.

{¶11} The following morning, on February 16, 2013, E.K.'s mother prepared breakfast for the sleepover guests and appellant. Victim A and Victim B ate breakfast with the other guests but did not discuss the events that had taken place the night before. After breakfast, Victim A and Victim B traveled to Victim A's house. At Victim

3

A's house, Victim A and Victim B discussed what had transpired the previous evening between appellant and each of them individually. The two girls decided they were not going to tell anyone what had happened. However, Victim A's mother noticed the two girls acting out of character; Victim B then told Victim A's mother about the events that had occurred at E.K.'s home.

{¶12} Early that same evening, Victim A and Victim B traveled with their parents to the Portage County Sheriff's Department where they each made separate statements to detectives. The two victims were also examined by, and gave statements to, nurses at University Hospitals.

{¶13} In response to the statements made by the victims, the Portage County Sheriff's Department began an investigation. Detectives from the Sheriff's Department made arrangements to interview appellant. On February 19, 2013, appellant was interviewed by two detectives at the Portage County Sheriff's Department. The interview was videotaped. Appellant was allowed to leave following the interview but was later arrested.

{¶14} On March 7, 2013, appellant was indicted by the Portage County Grand Jury and arraigned in the Portage County Court of Common Pleas. The indictment included a total of four counts: gross sexual imposition, a fourth-degree felony in violation of R.C. 2907.05(A)(1); unlawful sexual conduct with a minor, a fourth-degree felony in violation of R.C. 2907.04(A)&(B)(1); and two counts of importuning, fifth-degree felonies in violation of R.C. 2907.07(B) & (F). Appellant pled not guilty to all four counts, and the case proceeded to trial.

4

{¶15} A three-day jury trial began on May 16, 2013. At trial, the state presented testimony from Lieutenant Johnson, a detective from the Portage County Sheriff's Department, along with testimony from the two alleged victims. The state proffered as evidence the February 19, 2013 videotaped interview between appellant and Detectives Johnson and Burns from the Portage County Sheriff's Department. At the close of the state's case, appellant motioned for acquittal under Crim.R. 29. The trial court sustained the motion for acquittal as to importuning Victim A and overruled the motion as to the other three counts.

{¶16} On May 20, 2013, the jury returned a guilty verdict for importuning Victim B. The trial court declared a mistrial on the counts of gross sexual imposition and unlawful sexual conduct with a minor. On June 4, 2013, appellant entered a written plea of guilty to one count of sexual imposition, in violation of R.C. 2907.06(A)(4), and one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A) & (B)(2).

{¶17} Sentencing on the guilty verdict and written pleas was held on August 5, 2013. The trial court sentenced appellant to nine months of imprisonment for importuning, 180 days in jail for unlawful sexual conduct with a minor, and 60 days in jail for sexual imposition. The jail sentences were to run concurrent to one another and concurrent to the prison term.

{¶18} Appellant timely appealed, asserting two assignments of error. Appellant's first assignment of error includes two related issues and states:

> Defendant was denied effective assistance of counsel at trial in violation of the Sixth Amendment and Fourteenth Amendment to the United States Constitution and in violation of the Ohio Constitution when his trial counsel [1] failed to file a motion to

5

suppress the video recording of Defendant's police interrogation and [2] failed to timely object at trial to publication of the video to the jury.

{¶19} In order to prevail on an ineffective assistance of counsel claim, appellant must demonstrate from the record that trial counsel's performance fell below an objective standard of reasonable representation and that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Id.* at 142, citing *Strickland* at 695-696. There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142-143.

{¶20} Additionally, decisions on strategy and trial tactics are generally granted a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶35, citing *Strickland* at 689. Debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Phillips,* 74 Ohio St.3d 72, 85 (1995).

{¶21} Under his first assignment of error, appellant asks us to consider whether his interview with police should have been suppressed as an "un-Mirandized interrogation."

{¶22} "When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there

6

was a reasonable probability the result of trial would have differed if the motion had been filed or pursued." *State v. Walker*, 11th Dist. Lake No. 2009-L-155, 2010-Ohio-4695, ¶15 (citation omitted). "If case law indicates the motion would not have been granted, then counsel cannot be considered ineffective for failing to prosecute it." *State v. Gaines*, 11th Dist. Lake Nos. 2006-L-059 & 2006-L-060, 2007-Ohio-1375, ¶17 (citation omitted). Accordingly, in order to establish ineffective assistance of counsel for failure to file a motion to suppress, appellant must prove that there was a basis to suppress the evidence in question. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶65. In addition, counsel's decision not to object to the statement does not constitute ineffective assistance if it could fairly be characterized as trial strategy. This is true even if that strategy is debatable. *State v. Kish*, 11th Dist. Lake No. 2001-L-014, 2002-Ohio-7130, ¶66 (citation omitted).

**{¶23}** At the outset, we note it is rare an appellate court could conclude that a motion to suppress would have been successful based only on testimony adduced at trial. At a suppression hearing, the trial court is able to address a variety of factors not addressed in trial testimony, including the veracity and credibility of the witnesses at the suppression hearing. This assessment of the witnesses' credibility for purposes of suppression does not occur in trial and is therefore not subject to review here.

**{¶24}** Appellant argues that his interview with Detectives Johnson and Burns was custodial for purposes of *Miranda*, and because appellant was not advised of his *Miranda* rights, the videotape should have been suppressed. It is well settled that statements obtained during custodial interrogation of a defendant are not admissible unless the police utilize the proper procedural safeguards. *In re J.C.*, 11th Dist. Geauga

7

No. 2011-G-3017, 2011-Ohio-5864, ¶74. The requirement that police administer *Miranda* warnings is only triggered when interrogations are custodial. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, ¶47. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

{¶25} In determining whether an individual is in custody for the purposes of *Miranda*, the court must consider "the circumstances surrounding the interrogation" and whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). A non-custodial interrogation becomes custodial when there is a "formal arrest or restraint on freedom of movement" similar to that of a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). A determination of whether an interrogation is custodial or non-custodial depends on the objective circumstances of the interrogation, not the subjective views held by either the officer or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994).

{¶26} In the present case, appellant was advised at the start of the questioning that he was not under arrest and that, regardless of what facts came to light during the course of the interview, he would be allowed to leave and go home. Additionally, before the start of the interview, detectives showed appellant that the door was not locked and that he could leave at any time. Multiple times throughout the interview, detectives reminded appellant that he was allowed to leave and stop talking whenever he pleased. Indeed, appellant confirmed in the interview that he was free to leave. During the

8

interview, appellant was not restrained in any way. Finally, at the end of the interview, appellant did in fact go home. It is entirely plausible that appellant told his attorney that he did not feel he was restrained in any way and that he felt he was free to leave at any time, yet wanted to stay and give his statement to police. However, there is no way to determine that from this record, and it therefore cannot be determined that counsel was ineffective for failing to file a motion to suppress.

{¶27} In addition, it is plausible that counsel wanted to allow the admission of appellant's statement to police as a part of trial strategy. Indeed, in the interview, appellant denied the most serious of the offenses for which he was ultimately indicted. At trial, counsel argued that appellant's statement to police should be believed. The trial court directed a verdict in appellant's favor as to one of the counts, and the jury was unable to reach a verdict on the two most serious counts. This could well have been a result of permitting the jury to consider appellant's statement to the police.

{¶28} As appellant fails to show a reasonable probability that the motion to suppress would have been granted had his trial counsel objected to its introduction, he is unable to demonstrate ineffective assistance. *See State v. Tibbetts*, 92 Ohio St.3d 146, 165-166 (2001). Additionally, appellant's argument that there are additional facts, not already in the record, to support a claim that counsel was ineffective or that appellant's interview was custodial in nature should be raised in a petition for post-conviction relief. *State v. Cooperrider*, 4 Ohio St.3d 226, 228 (1983). Addressing these claims in a post-conviction proceeding would also allow the state to explore whether the failure to request suppression was a legitimate trial strategy.

{¶29} Appellant's first assignment of error is without merit.

9

**{¶30}** Appellant's second assignment of error states:

**{¶31}** "The decision of the jury was against the manifest weight of the evidence."

**{¶32}** "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted.) *State v. Hudson*, 2d Dist. Clark No. 2011 CA 100, 2013-Ohio-2351, ¶40. To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

> **{¶33}** [E]very reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, *Appellate Review*, Section 603 (1978); *see also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶21.

**{¶34}** Appellant argues that the only evidence presented by the state was "minimal and contradictory." In support of his argument, appellant states the only evidence of importuning was Victim B's own testimony and the video of appellant's

10

interrogation. In asserting that appellant's conviction is against the manifest weight of the evidence, appellant argues that Victim B's testimony at trial was inconsistent with statements she previously made to detectives at the Sheriff's Department and to a nurse at University Hospitals. Appellant also states that Victim B, in her statement to detectives, did not make reference to the sexual texts she exchanged with appellant. As such, appellant argues that his conviction is against the weight of the evidence. For the reasons that follow, we disagree.

{¶35} At trial, Victim B testified to first meeting appellant while she attended a sleepover at E.K.'s house. She testified that when the other girls fell asleep, she remained awake, texting appellant who was also sleeping in the same bedroom as the six girls. She further testified that she and appellant moved to the living room where they continued to text. According to Victim B's testimony, while they were in the living room together, appellant asked her whether she "would * * * like to learn" how to perform oral sex. While in the living room, Victim B testified to lifting up her shirt and showing appellant her breasts. On cross-examination, Victim B was asked about two inconsistent statements she gave regarding the showing of her breasts. In a statement to detectives, Victim B stated that she "flashed him" her breasts. However, in a separate statement to a nurse, Victim B stated that appellant pulled up her shirt. When asked at trial about this inconsistency, Victim B testified that appellant did not pull her shirt up, but that "while my shirt was up, he went forward and touched me." Victim B further testified that appellant opened her mouth and had her perform oral sex.

{¶36} In his interview with the sheriff's detectives, appellant admitted to exchanging text messages asking Victim B whether she "would * * * like to learn" how to

11

perform oral sex. Appellant also stated that Victim B showed him her breasts and rubbed her foot on his erect penis. However, appellant denied that oral sex took place between him and Victim B.

{¶37} Reviewing the evidence admitted in this case, including the testimony of Victim B and appellant's own statement to detectives, we cannot conclude the trier of fact lost its way in concluding appellant committed the importuning offense. The jury was free to believe all, part, or none of Victim B's testimony. *See generally State v. Antill*, 176 Ohio St. 61, 67 (1964). The jury was free to believe Victim B's reasons for giving statements that appeared inconsistent and for not including in her statement to detectives the text messages she received from appellant. The jury was also free to consider the videotape of appellant's own interview where he admitted to asking whether Victim B had "ever given head before" and whether she "would * * * like to learn." As such, appellant's conviction for importuning was not against the manifest weight of the evidence.

{¶38} Appellant next argues that the "State failed to carry its burden in proving Mr. Schwartz guilty." This contention goes to the sufficiency of the evidence rather than the weight.

{¶39} The test for determining the issue of sufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus following *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, the claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing

12

of the evidence. *State v. Lee*, 11th Dist. Lake No. 2010-L-084, 2011-Ohio-4697, ¶9. Crim.R. 29(A) requires the trial court to grant a motion for acquittal if the evidence is insufficient to sustain a conviction on the charged offenses.

{¶40} In order for there to be sufficient evidence to support appellant's conviction for importuning Victim B under R.C. 2907.07(B) & (F), the state had the burden to prove beyond a reasonable doubt the essential elements of the crime. Specifically, the evidence must demonstrate beyond a reasonable doubt that appellant solicited another, "not the spouse of the offender, to engage in sexual conduct, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age * * *." R.C. 2907.07(B)(1).

{¶41} At trial, the state introduced evidence which, when viewed in a light most favorable to the prosecution, would permit any rational trier of fact to find that the essential elements to support a conviction under R.C. 2907.07(B) were proven beyond a reasonable doubt. First, both Victim B and her mother testified that Victim B was 14 years old at the time of the offense and that she is not married to appellant. The prosecution also introduced sufficient evidence to prove that appellant solicited Victim B to engage in sexual conduct. Specifically, Victim B testified that appellant, in one text message, asked if she "would * * * like to learn" how to perform oral sex. Furthermore, appellant also acknowledged the basic substance of this text message exchange to the Sheriff's detectives. As such, appellant's contention that there was insufficient evidence to support his conviction for importuning is not well taken.

{¶42} Accordingly, appellant's second assignment of error is without merit.

13

{¶43} For the foregoing reasons, the decision of the Portage County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs.

COLLEEN MARY O'TOOLE, J., concurs in judgment only.