[Cite as *State v. Alex*, 2017-Ohio-8527.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO


STATE OF OHIO,                                  :        **O P I N I O N**

            Plaintiff-Appellee,          :

        - vs -                                  :        **CASE NO.  2016-A-0055**

LARRY E. ALEX,                              :

            Defendant-Appellant.       :


Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2015 CR 00315.

Judgment: Affirmed.


*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1}    Appellant, Larry E. Alex, appeals from the August 25, 2016 judgment entry of sentence and judgment on the verdict of the Ashtabula County Court of Common Pleas. Appellant was found guilty by jury verdict of Gross Sexual Imposition, a third-degree felony in violation of R.C. 2907.05(A)(4).  For the following reasons, the judgment of the trial court is affirmed.

**Procedural History**

{¶2} On July 17, 2015, appellant was charged with one count of Gross Sexual Imposition, a third-degree felony in violation of R.C. 2907.05(A)(4) (Count 1) and two counts of Gross Sexual Imposition, fourth-degree felonies in violation of R.C. 2907.05(A)(1) (Counts 2 & 3). The charges stemmed from appellant's alleged conduct with his minor daughter, B.A., from May 16, 2012, through May 15, 2014; January 1 through December 31, 2014; and January 20 through January 21, 2015.

{¶3} The matter proceeded to jury trial on August 23, 2016, and the jury entered its verdict on August 24, 2016, finding appellant guilty on Count 1 and not guilty on Counts 2 & 3.

{¶4} On August 25, 2016, the trial court entered its judgment on the verdict and sentenced appellant to serve a term of 60 months in prison on Count 1, with nine days of jail-time credit granted. He was classified as a Tier II Sex Offender and ordered to pay all court costs. The court also informed appellant he would be subject to a mandatory five-year period of post-release control following his release from prison.

{¶5} Appellant filed a timely notice of appeal on September 20, 2016.

**Trial Testimony**

{¶6} B.A. was 15 years old at the time of trial. She testified to multiple incidents that occurred, starting when she was 11 years old, during which appellant touched her inappropriately. At some point, according to her testimony, B.A. began sleeping with appellant in his bed because he was "having little strokes at night where he couldn't breathe" and she was worried about him. B.A. testified that appellant once restrained her to his bed with black leather straps and put his mouth on her breasts; he once restrained

her with ropes attached to eye bolts in the basement ceiling and touched her vagina; and he had grabbed her buttocks and breasts on multiple occasions. Shortly after the last incident, wherein appellant had grabbed her buttocks and breast, B.A. was grounded for calling appellant a "bastard."

{¶7} On January 23, 2015, about a week after the last incident, B.A. told a counselor at her school about appellant's behavior towards her.

{¶8} B.A. was later interviewed by Ann Lynch, a forensic interviewer from Ashtabula County Children Services. B.A. explained she had not told Ms. Lynch everything she testified to at trial because, at the time, she was "scared [that her dad] would get mad at [her] for telling."

{¶9} On cross-examination, defense counsel questioned B.A. about her interview with Ms. Lynch:

> **Defense Counsel:** Okay. You remember meeting with Miss Lynch, correct?
>
> **B.A.:** Yes.
>
> **Defense Counsel:** And she interviewed you in January 2015?
>
> **B.A.:** Yes.
>
> **Defense Counsel:** Did you, at the beginning of that interview, agree to a couple ground rules for the interview, that you would tell the truth; if you didn't know a question, you would say you didn't know; that type of thing?
>
> **B.A.:** Yes.
>
> **Defense Counsel:** Do you remember telling Miss Lynch that you couldn't say when these things happened. But that they had stopped?
>
> **B.A.:** I remember that.

3

**Defense Counsel:** And was that the truth?

**B.A.:** Yes. They were stopping.

**Defense Counsel:** Do you remember telling her you didn't know how old you were the first time it happened?

**B.A.:** Yes.

**Defense Counsel:** And what happened between then and now that now you know how old you were?

**B.A.:** That day I didn't - - I didn't tell her the whole truth, because I was afraid of getting in trouble for it.

**Defense Counsel:** Okay. And what you're saying is that now you're telling the whole truth?

**B.A.:** Yes.

* * *

**Defense Counsel:** Okay. Do you remember telling Miss Lynch - - I believe [the prosecutor] asked you about this earlier - - do you remember telling her you weren't sleeping in your room because of a spider?

**B.A.:** Yes.

**Defense Counsel:** And is that true?

**B.A.:** Yes.

**Defense Counsel:** You weren't sleeping in your room because there was a spider in it?

**B.A.:** Yes. That's part of the reason.

{¶10} Detective Michael Rose, a detective with a 13-year career investigating sexual assaults involving minors and serious physical abuse, testified that he investigated the allegations against appellant and had observed B.A's interview with Ms. Lynch.

4

{¶11} Detective Rose testified that appellant was interviewed on April 6, 2015, at the Ashtabula County Sheriff's Office; Special Agent Lance Fragomeli conducted most of the interview, while Detective Rose observed. Detective Rose testified appellant was told there was "some inappropriate touching that had occurred by him" to B.A.'s breasts, vagina, and buttocks.

{¶12} In the interview, appellant admitted to helping B.A. bathe on a couple of occasions and to applying Vick's VapoRub to her chest with his hand. Appellant also recalled there were times when B.A. climbed into his bed; sometimes he would wake up with his hand on her breast, with his hand across her stomach, or with his hand between her thighs. Appellant described that when B.A. climbed into his bed she was "scantily dressed" or, on a couple of occasions, naked. Appellant stated he began sleeping in his recliner because of his breathing issues and to keep B.A. from climbing into his bed. Appellant also told B.A. to stop coming into his bed because if anyone found out they would get the wrong idea.

{¶13} During the interview, appellant also described his sexual preferences. Appellant described situations with other consenting adults where they would tie each other up in appellant's basement or in his bedroom, using black straps and eye bolts located in the basement ceiling. Appellant never admitted to engaging in that behavior with children or non-consenting adults. Detective Rose testified appellant's description of tying up consenting adults was consistent with what B.A. had stated about being tied up by appellant during her forensic interview.

{¶14} Following the interview, appellant allowed Detective Rose to enter his home and take pictures. Detective Rose testified he observed the eye bolts in the ceiling

5

beams, and appellant gave a demonstration of how he used the black straps and eye bolts to tie up consenting adults in the basement.

{¶15} Appellant testified on his own behalf. Appellant testified that he had custody of his daughter from August 2012 until January 23, 2015, when he learned of the allegations B.A. had made against him. He was shocked when he received a call from Children Services informing him of the allegations because "it didn't happen, A. B, they said there was inappropriate touching." Appellant testified he had touched B.A.'s breasts "[d]uring bathing, when I applied Vick's when she was crouping and everything." Appellant explained he began bathing B.A. after he "got a call from the school that she was coming to school stinking * * * I did not want to get Children's Services involved, because the fact there was no reason for it other than my daughter refused to bathe herself." Prior to bathing B.A. himself, he tried to get his home health aide to help, but the home health aide refused.

{¶16} Appellant testified there were times when B.A. would sleep in his bed. Appellant woke up on a couple occasions with his hand laid across her; one time he woke up with his hand against the edge of her breast and another time with his hand at the lower part of her stomach. Appellant testified this was the only contact he had with B.A.'s private parts. When sleeping in his bed started to become a habit, appellant tried to get B.A. to sleep on the couch or in her own bedroom. Appellant testified that when B.A. did not stop, he moved out of his bedroom and began sleeping in his recliner in the kitchen.

{¶17} Appellant testified that he had engaged in unconventional sex with consenting adults. Appellant denied engaging in that behavior with non-consenting adults or with children. Appellant testified that he owns items that can be used for sex, and there

6

was a time when B.A. found those items. Appellant testified he has a "very open relationship with his daughter," and when she asked him about the items he did not lie to her with regard to what they were. Appellant denied using those items with B.A.

**{¶18}** On January 22, 2015, appellant had grounded B.A. for the weekend because she was not cleaning her room. Appellant testified that B.A. started screaming and slamming things in response to being grounded.

**Victim Credibility**

**{¶19}** Appellant's first assignment of error on appeal relates to Detective Rose's testimony:

**{¶20}** "The trial court erred to the prejudice of Appellant when it allowed Detective Rose [to] vouch for the credibility of the alleged victim [B.A.]."

**{¶21}** Appellant takes issue with the following testimony on direct examination of Detective Rose:

> **Prosecutor:** Okay. The - - you were here during the course of [B.A.]'s testimony; is that correct?
>
> **Detective Rose:** Yes, sir.
>
> **Prosecutor:** And you were present during the forensic exam of [B.A.] on January 28, 2015?
>
> **Detective Rose:** Yes, sir.
>
> **Prosecutor:** And through your investigation and the being present during her initial interview, was she inconsistent with what she stated?
>
> **Detective Rose:** The major facts of what she stated are basically the same. There are some differences. We're talking about, of course, a large time frame difference between the interview and yesterday, but the major parts were very consistent.

**{¶22}** Because defense counsel did not object to Detective Rose's testimony at trial, appellant has forfeited all but plain error review on appeal. *State v. Guyton*, 11th Dist. Ashtabula No. 2016-A-0023, 2016-Ohio-8110, ¶24, citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶108.

**{¶23}** Pursuant to Crim.R. 52(B), to support a finding of plain error there must be: (1) an error, *i.e.*, a deviation from a legal rule; (2) the error must be an obvious defect in the trial proceedings; and (3) the error must have affected substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) (citations omitted). As the reviewing court, we "must consider all the evidence at trial and determine whether the alleged error substantially affected the outcome of the trial and influenced the jury to enter a verdict that it would not have otherwise entered if the error had not occurred." *State v. Davie*, 11th Dist. Trumbull No. 92-T-4693, 1995 WL 870019, *11 (Dec. 27, 1995), citing *State v. Slagle*, 65 Ohio St.3d 597, 605 (1992).

**{¶24}** Appellant argues that allowing Detective Rose to testify that B.A.'s trial testimony was consistent with her initial interview implied he believed the truth of her testimony. Appellant maintains the jury was not present during the forensic interview conducted by Ann Lynch and had to rely on Detective Rose's testimony that B.A.'s trial testimony was consistent with the statements she had made during the interview. Appellant further argues the testimony of a police officer carries substantial weight with the jury and creates the risk the jury will substitute the officer's beliefs for its own. In response, appellee argues Detective Rose did not directly express an opinion as to B.A.'s veracity. Appellee maintains Detective Rose testified to the observations he made while

8

watching B.A.'s interview with Ms. Lynch, but did not testify as to what he believed those observations meant.

{¶25} Appellant cites to *State v. Boston*, 46 Ohio St.3d 108 (1989) in support of his argument. *Boston* proscribes "an expert [from testifying] as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus. The court explained that such testimony infringes on the role of the fact finder, "'who is charged with making determinations of veracity and credibility. * * * In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses.'" *Id.* at 128-129, quoting *State v. Eastham*, 39 Ohio St.3d 307, 312 (1988) (Brown, J., concurring). The holding in *Boston* also proscribes lay witness testimony of victim veracity. *See State v. Miller*, 2d Dist. Montgomery No. 18102, 2001 WL 62793, *5 (Jan. 26, 2001) ("regardless of whether a police officer testified as an expert or lay witness, his testimony cannot violate *Boston*"); *State v. Daniel*, 8th Dist. Cuyahoga No. 103258, 2016-Ohio-5231, ¶48.

{¶26} In the Supreme Court's later decision of *State v. Stowers*, 81 Ohio St.3d 260 (1998), the court recognized a distinction "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child *has* been abused." *Id.* at 262 (emphasis sic). The *Stowers* court held that the holding in *Boston* "does not proscribe testimony which is additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the child's veracity." *Id.* at 262-263 (emphasis sic). It *is* permissible to admit testimony of an expert to explain concepts such as delayed disclosure and recantation of prior statements because these characteristics are

consistent in some abuse victims, and it can *assist* jurors in assessing credibility. *See id.* at 263. "Such testimony is permitted to counterbalance the trier of fact's natural tendency to assess recantation and delayed disclosure as weighing against the believability and truthfulness of the witness. This testimony 'does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination.'" *Id.*, quoting *State v. Gersin*, 76 Ohio St.3d 491, 494 (1996).

**{¶27}** In the present case, Detective Rose did not directly offer an opinion on B.A.'s veracity or credibility but, instead offered information to assist the jury in reaching its own conclusion as to B.A.'s veracity or credibility. Based on his experience investigating cases of child sexual abuse, Detective Rose testified that child victims of sexual abuse are normally only interviewed once and it is common for them to refrain from disclosing all the details of their sexual abuse during the interview. Detective Rose's statement about B.A.'s trial testimony in relation to her initial interview was based on his previous experience with child sexual abuse victims, the observations he made from viewing B.A.'s interview, and his investigation of the case.

**{¶28}** Even if Detective Rose's statements were to be construed as vouching for B.A.'s veracity and improperly bolstering her credibility, we conclude it did not affect appellant's substantial rights. Although the jury did not view B.A.'s interview with Ms. Lynch, defense counsel cross-examined B.A. and highlighted inconsistencies between her trial testimony and interview statements. The jury was able to hear B.A.'s explanation with regard to the inconsistent statements. Defense counsel also cross-examined Detective Rose, asking him specific questions about the inconsistencies between B.A.'s trial testimony and her initial interview.

10

**{¶29}** Appellant's first assignment of error is without merit.

## Ineffective Assistance of Counsel

**{¶30}** Appellant's second assignment of error states:

**{¶31}** "Appellant's Sixth Amendment Rights were compromised by ineffective assistance of counsel."

**{¶32}** In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)). There is a general presumption that trial counsel's conduct is within the broad range of professional assistance, *id.* at 142, and debatable trial tactics do not generally constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995) (citation omitted); *see also State v. Schwartz*, 11th Dist. Portage No. 2013-P-0076, 2014-Ohio-4299, ¶20. In order to show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's error, the result of the trial would have been different. *Bradley*, *supra*, at paragraph three of the syllabus.

**{¶33}** Appellant initially argues that trial counsel was deficient for failing to object to Detective Rose's testimony regarding the consistency of B.A.'s initial interview and trial testimony. We have determined Detective Rose's testimony was not improper and that, even if it was improper, it did not affect appellant's substantial rights. Therefore, trial counsel was not ineffective for failing to object to Detective Rose's testimony.

11

{¶34} Appellant also argues that trial counsel was ineffective for questioning B.A. on cross-examination about instances when appellant helped her bathe. Appellant argues this testimony was irrelevant and only served to reinforce the impression that appellant sexually abused his daughter. Appellant takes issue with the following testimony:

> **Defense Counsel:** Was there ever a time when your dad helped you shower?
>
> **B.A.:** Yes.
>
> **Defense Counsel:** And when did that happen?
>
> **B.A.:** Every now and then he would make me let him bath (sic) me.
>
> **Defense Counsel:** Okay. And what did that consist of?
>
> **B.A.:** He would wash me, and that was it. That was all I remember him doing.
>
> **Defense Counsel:** And when was the last time? How old were you at the last time that happened?
>
> **B.A.:** I don't remember.

{¶35} Trial counsel's decisions with regard to questioning on cross-examination fall within the realm of trial strategy. *See State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶101. From this record, there is no way for this court to determine counsel's reasoning in asking B.A. about appellant bathing her. Further, appellant has not established a reasonable probability that the jury would have rendered a different verdict had this testimony not been elicited. Therefore, we do not find defense counsel was ineffective for implementing this line of questioning during cross-examination of B.A.

{¶36} Appellant's second assignment of error is without merit.

{¶37} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


COLLEEN MARY O'TOOLE, J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.