OPINION
{¶ 1} Appellant appeals the decision of the trial court refusing to give a jury instruction on voluntary manslaughter.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} The undisputed facts are as follows:
 {¶ 4} On or about January 2, 2002, at approximately 3:30 a.m., Appellant entered his former marital residence, which he was prohibited to do pursuant to a valid TPO, and shot and killed his former best friend, Robert Hayes.
 {¶ 5} The TPO was issued on December 28, 2001, based on allegations of physical abuse occurring on Christmas Day. As a result of said TPO, Appellant was barred from contacting his wife Jamie and the three minor children living at their residence.
 {¶ 6} Appellant's wife Jamie and his best friend Robert Hayes worked together on the same shift at Stone Container. Appellant suspected that his wife was involved in an extramarital affair with Hayes.
 {¶ 7} Appellant confronted Hayes about his suspicions on January 1, 2002, at a storage facility. Appellant claims that Hayes eventually admitted and even gloated that he was sleeping with Appellant's wife. It should be noted that Hayes was married to one of Appellant's former wives.
 {¶ 8} Hayes went to Jamie's mobile home and informed her of the conversation that had transpired between him and Appellant. Hayes also returned later that evening and parked his vehicle in the driveway in front of the residence. At some time during the evening, Jamie heard what she believed to be Appellant's van nearby.
 {¶ 9} Hayes was still there at approximately 3:15 a.m. when Jamie's son Alfred, who was staying with Jamie along with his fiancée Amanda, saw "someone walking around the front yard" whom he believed to be Steve. (T. Vol. VI at 1449).
 {¶ 10} Jamie called "911" and reported that her husband was attempting to violate the TPO.
 {¶ 11} Appellant next quickly went up the ramp to the trailer, entered through the unlocked door, and either entered the kitchen or fired into it, where Jamie and Hayes were waiting. (T. Vol. IV at 989, 992, 1026, Vol. VI at 1455).
 {¶ 12} Appellant said "Who's there? I'll shoot you where you stand" (T. Vol. VI at 1523).
 {¶ 13} Appellant fired a second shot within seconds of the first shot, which struck Hayes in the heart, said shot being fired from a distance of one to four feet.
 {¶ 14} According to Jamie "He . . . shot him. No words were said. There was no confrontation. There was nothing. He just shot him." (T. Vol. IV at 992).
 {¶ 15} Appellant did not see Jamie who was hiding behind the refrigerator. Appellant next "woke" Alfred, who was pretending to be asleep on the floor with his fiancée Amanda. Appellant asked Alfred to help him find Jamie. (T. Vol. VI at 145501463, 1503-1504). While this was transpiring, Jamie escaped from the trailer and ran to a neighbor's residence where a second "911" call was placed reporting the shooting. (T. Vo. IV at 995-997).
 {¶ 16} Alfred also left the trailer, telling Appellant that he was going to look outside for Jamie. (T. Vol. IV at 994, Vol. VI at 1462-1463).
 {¶ 17} Appellant gathered his three minor children along with Amanda into the back bedroom, covered the window and blocked access to the bedroom with a gun cabinet. A standoff began which lasted approximately six hours. In the end, Appellant released all of his hostages and gave himself up to the police.
 {¶ 18} Police located Appellant's vehicle parked a little less than a half mile away from the mobile home, from where he apparently walked to the residence.
 {¶ 19} Appellant was indicted on one count of aggravated murder (murder committed during the course of an aggravated burglary), one count of aggravated murder with prior calculation and design, one count of aggravated burglary, four counts of kidnapping, a violation of the TPO, and a firearm specification.
 {¶ 20} On October 3, 2002, a trial commenced in this matter.
 {¶ 21} Appellant did not testify at trial.
 {¶ 22} At the close of all evidence, Appellant requested an instruction on voluntary manslaughter, which the trial court denied.
 {¶ 23} After deliberations, the jury returned verdicts of guilty on all charges. The jury declined to recommend the death penalty, instead recommending a sentence of 25 years to life. The trial court merged the aggravated murder counts for purposes of sentencing and sentenced appellant to 25 years to life on the aggravated murder charge, 9 years on the aggravated burglary, 7 years on each count of kidnapping (to run concurrently with each other) and three years on the firearm specification. The aggregate sentence is 44 years to life.
 {¶ 24} It is from this conviction that Appellant now appeals, assigning the following error for review:
 ASSIGNMENT OF ERROR {¶ 25} "I. The trial court's denial of appellant's motion to give a jury instruction on voluntary manslaughter deprived appellant of his right to due process of law and a fair trial as guaranteed by the ohio and u.s. constitutions."
 I. {¶ 26} In his sole assignment of the error, Appellant argues that the trial court erred in failing instruct the jury on voluntary manslaughter. We disagree.
 {¶ 27} The trial court has discretionary authority in its duty to instruct on the law as it pertains to the case. State v. Nelson (1973),36 Ohio St.2d 79.
 {¶ 28} Voluntary manslaughter is set forth in R.C. 2903.03(A) and states as follows:
 {¶ 29} "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another . . ."
 {¶ 30} "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force."State v. Mabry (1982), 5 Ohio App.3d 13, paragraph five of the syllabus, motion for leave to appeal overruled (Nov. 17, 1982), No. 82-1237, unreported. Courts must also take into account the defendant's emotional and mental state and the surrounding conditions and circumstances at the time. Id.
 {¶ 31} As noted by the Supreme Court of Ohio, there is no set formula or bright line test for determining what constitutes reasonably sufficient provocation occasioned by the victim that would incite a person to use deadly force. This question is to be resolved by examining the circumstances of the case:
 {¶ 32} "The provocation must be reasonably sufficient to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Once the defendant has been sufficiently provoked by the victim, it may be proper to label the conduct from that point onward `understandable.' * * * Our criminal law recognizes that the provoked defendant is less worthy of blame than the unprovoked defendant, but the law is unwilling to allow the provoked defendant to totally escape punishment. * * * The jury, because it has the ability to find the sufficiently provoked defendant guilty of voluntary manslaughter, rather than murder, is able to exercise the value judgment provided by the law in these circumstances. (Citation and footnote omitted.) State v. Shane (1992), 63 Ohio St.3d 630, 635.
 {¶ 33} Voluntary manslaughter instructions are warranted only when there is sufficient evidence presented at trial which would allow jury reasonably to reject greater offense of aggravated murder or murder and find defendant guilty of lesser offense of voluntary manslaughter. Id.
 {¶ 34} In determining whether evidence has been presented to warrant a voluntary manslaughter instruction, the trial court is required to consider the facts of the case and "evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." Id. citing State v. Wilkins (1980), 64 Ohio St.2d 382,388.
 {¶ 35} In Shane, supra, the Ohio Supreme Court also held that the interval between the provocation and the fatal blow must be so close in time that the defendant had no time to "cool off."
 {¶ 36} In the present case, even if Appellant were to argue that seeing the victim's car in his driveway, outside his residence in the early morning hours, provoked him, Appellant proceeded to park his car almost one half mile away and walk to the mobile home. That amount of time would have allowed a cooling off period.
 {¶ 37} Moreover, even if the events could be viewed as sufficiently provocative under an objective standard in the case sub judice, defendant was not entitled to a voluntary manslaughter instruction as a matter of law since there is no evidence defendant subjectively acted under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite defendant into using deadly force. State v. Shane,supra, 63 Ohio St.3d at 634.
 {¶ 38} The record contains absolutely no testimony that defendant was under the influence of sudden passion or in a sudden fit of rage at any time during the incident. Upon entering the mobile home, Appellant did not become involved in an argument with the victim nor did he find the victim and his wife in a situation which could be argued to enrage him.
 {¶ 39} There is no evidence of any provocation by the victim which would justify the use of deadly force. Robert Hayes never had an opportunity to even speak with Appellant prior to being shot by him, let alone add fuel to his rage. Appellant came to the trailer armed with at least one loaded gun.
 {¶ 40} From the evidence presented, we find no reason for the trial court to have charged on voluntary manslaughter.
 {¶ 41} Under the circumstances, based on our review of the record, no evidence was adduced at trial which would allow the jury to reasonably reject the greater offense of aggravated murder and find defendant guilty of the lesser offense of voluntary manslaughter in the case sub judice.
 {¶ 42} Appellant's sole assignment of error is overruled.
 {¶ 43} For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.
Boggins, J., Hoffman, P.J. and Wise, J., concur.