[Cite as *State v. McEndree*, 2020-Ohio-4526.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO


STATE OF OHIO,                                  :        **O P I N I O N**

             Plaintiff-Appellee,            :

             - vs -                                  :        **CASE NO. 2019-A-0038**

JOLENE R. MCENDREE a.k.a. JOLEEN    :
RENAY MCENDREE,

             Defendant-Appellant.           :


Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00337.

Judgment: Affirmed.


*Cecilia M. Cooper*, Ashtabula County Prosecutor, and *Shelly M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, Ohio 44047-1092 (For Plaintiff-Appellee).

*Rick L. Ferrara*, 2077 East 4th Street, 2nd Floor, Cleveland, Ohio 44115 (For Defendant-Appellant).


MARY JANE TRAPP, J.

{¶1} Appellant, Joleen McEndree ("Ms. McEndree"), appeals her convictions for aggravated murder, two counts of murder with firearm specifications, and felonious assault following a jury trial in the Ashtabula County Court of Common Pleas.

{¶2} Ms. McEndree assigns seven errors for our review: (1) the trial court erred in denying her motion for a continuance in order to avail herself of new burden shifting

provisions of the self-defense law; (2) the trial court abused its discretion in failing to properly consider her *Batson* jury preemptory challenge based on gender; (3) defense counsel provided ineffective assistance of counsel in failing to request jury instructions on battered woman syndrome ("BWS"), self-defense, and voluntary manslaughter, and in failing to insist on a verdict in the jury instructions for involuntary manslaughter; (4) the trial court erred in precluding a finding on involuntary manslaughter; (5) the trial court and the state of Ohio denied her due process through the use of the state's expert witness testimony undermining BWS as a defense under Ohio law; (6) defense counsel rendered ineffective assistance by failing to object to that expert testimony; and (7) the manifest weight of the evidence did not support her conviction because her expert concluded she was insane at the time of the commission of the offense.

{¶3}    We affirm the judgment of the Ashtabula County Court of Common Pleas for the following reasons:  (1) the issue of whether the trial court abused its discretion in denying her motion for a continuance has no bearing on her conviction since there was no evidence of self-defense, nor did she even attempt to raise it; (2) the prosecutor had a gender-neutral explanation for using a preemptory strike on a female juror, and there was no evidence of gender discrimination; (3) trial counsel was not ineffective for failing to request an otherwise appropriate jury instruction on BWS since debatable trial tactics do not necessarily constitute ineffective assistance of trial counsel or plain error when it has not been demonstrated there is a reasonable probability, were it not for counsel's error, the result of the proceedings would have been different; (4) the trial court did not err in its instruction on involuntary manslaughter because it properly charged the jury; (5) the state was permitted to rebut the opinions of Ms. McEndree's expert on BWS and her

2

sanity at the time of the offense with an expert of its own; (6) it was not ineffective assistance for Ms. McEndree's counsel to fail to object to the state's permissible expert testimony; and lastly, (7) the manifest weight of the evidence supports Ms. McEndree's conviction since the jury was free to believe the testimony of either expert.

## Substantive and Procedural History

{¶4} On June 30, 2017, Ms. McEndree called 911 and informed the dispatcher that she shot and killed her live-in boyfriend, Jamie McCann ("Mr. McCann"). Officers responded and found Ms. McEndree sitting outside of her home and Mr. McCann dead inside the residence, apparently from two gunshot wounds. Ms. McEndree confessed to the police that after a dispute with Mr. McCann, she went to the house of Raylene Brugman ("Ms. Brugman"), her neighbor and friend, stole her gun, returned home, and shot Mr. McCann twice.

{¶5} During the police interview, a video recording of which was later shown to the jury, Ms. McEndree told the police that Mr. McCann abused her. The evening before the murder, Mr. McCann broke a vase over Ms. McEndree's head, rendering her unconscious. On the day of the murder, Mr. McCann was high on cocaine and became upset when Ms. McEndree refused to use drugs with him. An argument ensued, whereupon Mr. McCann grabbed her hair and was verbally abusive. When asked if she had any marks or injuries, she said no. After the altercation, she fled to Ms. Brugman's home.

{¶6} She explained that her tumultuous relationship with Mr. McCann began five years ago. Although she filed several police reports, she did not seek a protective order or pursue charges against him. She told the police the crime was "spontaneous;" she

saw Ms. Brugman's gun, and when Ms. Brugman took a phone call in another room, she took it and stated, "I'm doing it this time." She repeatedly told the police that she "snapped," had "no other way out," "couldn't get out," and that she had been verbally, mentally, and physically abused by Mr. McCann.

{¶7} Ms. McEndree later told defense expert witness, Thomas Boyd, Psy.D. ("Dr. Boyd"), that she had met Mr. McCann in Alcoholics Anonymous when she was 23. They began dating and cohabiting toward the end of 2014. She reported that the abuse started almost instantly and that she never sought medical care following any of the abusive incidents. They had a son together in 2015, but the child was taken away at the time of birth due to her previous substance abuse. She believed Mr. McCann was having an affair with his ex-girlfriend, who was stealing from her.

{¶8} She told both Dr. Boyd and the state's expert witness, Thomas G. Gazley, Ph.D. ("Dr. Gazley"), that she took the gun with the intent of scaring Mr. McCann. Ms. McEndree related that she previously witnessed Ms. Brugman threatening Mr. McCann with it, telling him to stop abusing Ms. McEndree. She stated that she had no intention to actually shoot Mr. McCann but the gun went off. She "couldn't believe it when the gun went off." She said she fired the gun again into the floor to verify that it had actually gone off.

{¶9} She reported a history of multiple closed head injuries caused by Mr. McCann's physical abuse, including knocking her unconscious at least three times during their relationship and on the day before the murder. She filed five police reports during their relationship. Ms. Brugman also filed one on her behalf after witnessing Mr. McCann's abuse. Ms. McEndree, however, never followed through with pressing

4

charges. She believes Mr. McCann's abuse stemmed from his drug use. She stayed with Ms. Brugman several times "to get away from the violence."

### Pretrial Motions

{¶10} Ms. McEndree's case was bound over from the Ashtabula Municipal Court to the Ashtabula County Court of Common Pleas, where she was indicted by the grand jury on five counts: (1) aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A), with a firearm specification in violation of R.C. 2941.145; (2) murder, an unclassified felony, in violation of R.C. 2903.02(A), with a firearm specification in violation of R.C. 2941.145; (3) murder, an unclassified felony, in violation of R.C. 2903.02(B), with a firearm specification in violation of R.C. 2941.145; (4) felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2); and (5) grand theft, a third-degree felony, in violation of R.C. 2913.02(A)(1) and (B)(4).

{¶11} Subsequent to her arraignment, where Ms. McEndree pleaded not guilty and was appointed counsel, she entered a plea of not guilty by reason of insanity and requested a competency evaluation pursuant to R.C. 2945.371(A). The trial court set a forensic evaluation pursuant to R.C. 2941.371(G)(3), competency to stand trial, and R.C. 2945.371(G)(4), not guilty by reason of insanity. On November 27, 2017, the trial court issued a judgment entry finding Ms. McEndree competent to stand trial and sane. An evaluation from the Forensic Psychiatric Center of Northeast Ohio, Inc. determined she was competent and legally sane at the time of the offense.

{¶12} Several months later, the state filed a motion in limine to prohibit Ms. McEndree from introducing any evidence or testimony relating to Mr. McCann's abuse of her and/or BWS. The state argued that any evidence or testimony relating to the victim's

5

abuse of Ms. McEndree, outside of her recorded statement to the police, was irrelevant, because she could not establish the requisite elements to raise the affirmative defense of self-defense. Ms. McEndree filed a response, stating that it was not her intention to request a jury instruction on self-defense, and that if she did wish to do so, it would require the use of a qualified expert. Therefore, Ms. McEndree requested the court to likewise prohibit the state from introducing evidence of BWS by either arguing or commenting that Ms. McEndree did not suffer from BWS and/or that the defense failed to offer any testimony of BWS, since the state failed to provide the defense with a qualifying expert and report.

{¶13} A short time later, Ms. McEndree was hospitalized, and the jury trial was continued. Ms. McEndree filed a motion for expert fees and for Dr. Boyd to be appointed as a defense expert witness to perform a second sanity and competency evaluation. In turn, the state filed a motion to appoint Dr. Gazley of the Forensic Psychiatric Center of Northeast Ohio, Inc. to re-evaluate Ms. McEndree to determine her current competency to stand trial. In separate judgment entries, the trial court granted Ms. McEndree's motion for expert funds for Dr. Boyd and the state's motion for an evaluation by Dr. Gazley on Ms. McEndree's competency to stand trial. The court further set the matter for a hearing to determine Ms. McEndree's physical ability to stand trial.

{¶14} Following the hearing on competency where both Dr. Gazley and Dr. Boyd opined Ms. McEndree was competent, the court found Ms. McEndree competent to stand trial and that the hearing to determine her physical ability to stand trial was moot.

{¶15} The state then filed another motion for an evaluation for Dr. Gazley to re-evaluate Ms. McEndree to determine her sanity for the specific purpose of consideration of BWS, which the court granted.

{¶16} After receiving Dr. Boyd's report, the state filed a second, supplemental motion in limine to prohibit the introduction of evidence or testimony relating to the victim's abuse of Ms. McEndree. In his report, Dr. Boyd concluded Ms. McEndree was sane at the time she committed the offense. Dr. Boyd also believed that BWS was a mitigating factor that had a "negative influential impact" on her "state of mind." The defense filed a motion in response, arguing that Dr. Boyd's testimony was relevant as to self-defense and that since Dr. Boyd is qualified to testify as an expert, his testimony was admissible.

{¶17} The court overruled the state's motion, finding self-defense is an affirmative defense and that Dr. Boyd's testimony and report is relevant and admissible. Further, it was not for the court to determine the credibility of the evidence but for the jury to decide whether Ms. McEndree met her burden.

{¶18} On February 1, 2019, shortly before trial, Ms. McEndree filed a motion for self-defense jury instructions, pursuant to R.C. 2901.05, as amended by H.B. 228, which would (and did) become effective on March 28, 2019. The new statute shifted the burden from the defendant to the prosecution to prove beyond a reasonable doubt that the person charged did not use force against another in self-defense, defense of another, or defense of that person's residence. The state opposed the motion, arguing it was not currently the law and would not be the law on February 26, 2019, the date Ms. McEndree was scheduled to stand trial. The court overruled Ms. McEndree's motion for self-defense jury instructions based on the new burden shifting statute, agreeing with the state that the jury

7

should not be instructed on the basis of a statute that has not yet taken effect nor should the trial be further delayed.

{¶19} Dr. Boyd filed a final report in which he concluded Ms. McEndree was insane at the time of the offense. Among other contributing factors, he opined Ms. McEndree suffered from BWS. Based on Dr. Boyd's report, Ms. McEndree entered a plea of not guilty by reason of insanity pursuant to R.C. 2943.03(E).

### *The Jury Trial*

{¶20} The case proceeded to a five-day jury trial. The state presented the testimony of thirteen witnesses, including various officers and detectives from the Ashtabula City Police Department, the Ohio Bureau of Criminal Investigation ("OBCI"), the chief investigator from the Ashtabula City Coroner's Office, the Ashtabula County Coroner, the Cuyahoga County Medical Examiner, who handles autopsies for the county of Ashtabula, and the victim's brother, Chris McCann. The state also introduced evidence of the crime scene, medical/autopsy reports of the victim, 911 calls from Ms. Brugman and from Ms. McEndree, both reporting the murder shortly after the incident, and Ms. McEndree's video-recorded interview-confession with the police after arrest.

{¶21} The defense presented the expert testimony of Dr. Boyd, who after informing the jury of the tests and measurements he used to evaluate Ms. McEndree, opined Ms. McEndree was insane for a "temporary short duration" at the time of the offense and shortly thereafter, and that BWS was a contributing factor. In rebuttal, the state presented the expert testimony of Dr. Gazley, who opined that Ms. McEndree suffered from major depressive disorder that was in partial remission, but that this

8

disorder did not interfere with her knowing the wrongfulness of her actions. He further opined that although she was an "abused woman," her behavior had a rational motivation.

{¶22} The court overruled the defense's Crim.R. 29 motion for acquittal on all the counts except for grand theft and then reviewed the jury instructions with counsel. The court declined to read the specific insanity language defense counsel requested because the court had included substantially similar language in the existing charge.

{¶23} The court also overruled Ms. McEndree's motion to include a reckless homicide instruction, finding there was no evidence to support such a charge. According to the court, there was no evidence of a struggle and no evidence the gun was discharged due to a struggle.

{¶24} The court did agree to include instructions for lesser included offenses of involuntary manslaughter on count 3 (murder) and aggravated menacing on count 4 (felonious assault).

{¶25} After closing arguments, the jury was instructed on the charges, the lesser included offenses on count 3 and 4, and Ms. McEndree's not guilty by reason of insanity defense. Following deliberations, the jury returned a verdict finding Ms. McEndree guilty of all four remaining counts of the indictment: aggravated murder, two counts of murder with firearm specifications, and felonious assault. The jury did not find, by a preponderance of the evidence, that Ms. McEndree was not guilty by reason of insanity.

{¶26} Prior to sentencing, counsel stipulated and the court determined that all of the counts were allied offenses and should merge for sentencing purposes. The state elected to proceed on count 1, aggravated murder, an unclassified felony, in violation of R.C. 2903.01(A). Accordingly, the court sentenced Ms. McEndree to a mandatory term

9

of life imprisonment with eligibility for parole after serving 30 years, in addition to a consecutive, mandatory three-year prison term for the specification that she used a firearm to facilitate the offense of aggravated murder.

{¶27} Ms. McEndree now raises seven assignments of error for our review:

{¶28} "[1.] The trial court abused its discretion in failing to allow a requested continuance of one month, and thus application of the most recent self-defense statute and burden shifting provisions of law.

{¶29} "[2.] The trial court abused its discretion in failing to properly consider appellant's *Batson* challenge based on gender.

{¶30} "[3.] Defense counsel provided constitutionally ineffective assistance in failing to request jury instructions on battered women's syndrome, self-defense, voluntary manslaughter, and in failing to insist on a verdict in the instructions for involuntary manslaughter.

{¶31} "[4.] The trial court erred in precluding a finding on involuntary manslaughter.

{¶32} "[5.] The trial court and state of Ohio denied appellant due process through the state's expert witness testimony undermining battered women's syndrome as a defense under Ohio law.

{¶33} "[6.] Defense counsel rendered ineffective assistance by failing to object to inadmissible expert testimony.

{¶34} "[7.] The manifest weight of the evidence did not support conviction when considering appellant's expert regarding a conclusion of insanity at the time of the act."

**Motion to Continue Trial to Utilize the New Burden-Shifting
Self-defense Instruction**

10

{¶35} In Ms. McEndree's first assignment of error, she contends the trial court erred in denying her motion for a continuance in order to avail herself of the self-defense statute amended after the date of the offense, which provides that "[i]f, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution [rather than the accused person] must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." R.C. 2901.05(B)(1).

{¶36} We review the trial court's grant or denial of a continuance for an abuse of discretion. *State v. Anderson*, 11th Dist. Geauga No. 2011-G-3044, 2012-Ohio-4203, ¶26, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion is a term of art, "connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-78 (1925). Stated differently, an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶37} In deciding whether to continue a proceeding, a trial court weighs any potential prejudice to a defendant against concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice. *Anderson* at ¶26, citing *Unger* at 67. More specifically, in considering a motion for a continuance, a court should take into account "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants,

11

witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Id.*, quoting *Unger* at 67-68.

{¶38} The General Assembly amended R.C. 2901.05, effective March 28, 2019, which, inter alia, shifted the burden of proof in self-defense claims to the state, which must prove beyond a reasonable doubt that the use of force was *not* self-defense.

{¶39} We cannot say the trial court abused its discretion in denying a continuance for a trial that was delayed for over two years due to medical issues and psychiatric evaluations for the purposes of an inapplicable defense. The record is devoid of any evidence that Ms. McEndree acted in self-defense, and Ms. McEndree did not raise [the defense] at trial.

{¶40} There was no evidence, whether the burden is on the defense or the prosecution, that Ms. McEndree (1) was not at fault in creating the situation, (2) had a bona fide belief that she was in imminent danger, (3) did not violate a duty to retreat, and (4) the force used was necessary. *See State v. Buckley*, 11th Dist. Lake No. 2018-L-118, 2019-Ohio-3991, ¶34, citing *State v. Imondi*, 11th Dist. Lake No. 2014-L-019, 2015-Ohio-2605, ¶17.

{¶41} According to Ms. McEndree's recorded confession to the police, she had an altercation with Mr. McCann. She subsequently left her home and rode her bicycle to a neighbor's house. Instead of calling the police for assistance, she stole her neighbor's gun and rode her bicycle back to her house, whereupon she shot Mr. McCann twice at

12

close range. When the police asked Ms. McEndree in her recorded police interview if she had been angry when she stole the gun, she replied that she was used to the abuse, but she had "had it" and "snapped."

{¶42} Ms. McEndree argues that the new legislation would have been applied retroactively if the court had delayed the trial until after the effective date. We disagree.

{¶43} The Supreme Court of Ohio has articulated a two-part test, "* * * involving both statutory and constitutional analyses, for determining whether a statute is impermissibly retroactive under Section 28, Article II. Because R.C. 1.48 establishes a presumption that statutes operate prospectively only, '[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply.' * * * If there is no 'clear indication of retroactive application, then the statute may only (italics) apply to cases which arise subsequent to its enactment.' (Emphasis sic.) * * * If we can find, however, a 'clearly expressed legislative intent' that a statute apply retroactively, we proceed to the second step, which entails an analysis of whether the challenged statute is substantive or remedial." (Internal citations omitted.) *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶10.

{¶44} Ms. McEndree notes the statute "makes no reference to any retroactive limitation." Moreover, inasmuch as the amended self-defense statute creates a new burden of proof on the state, we find it is *substantive* and cannot constitutionally be applied retroactively. *Id.; see also Bielat v. Bielat*, 87 Ohio St.3d 350, 359 (2000); *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 107 (1988).

13

{¶45} Two sister districts have also determined that R.C. 2901.05 should not be applied retroactively. *See State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, and *State v. Whitman*, 5th Dist. Stark No. 2019CA00094, 2019-Ohio-4140. In Whitman (italics), the Fifth District cited our recent opinion in *State v. Krug,* 11th Dist. Lake No. 2018-L-056, 2019-Ohio-926, appeal not accepted (italics), 156 Ohio St.3d 1454, 2019-Ohio-2780, where we observed that "[s]imply because the General Assembly has shifted the burden of proof going forward with evidence of an affirmative defense of self-defense, defense of another, or defense of the accused's residence/vehicle, it does not equate to finding the former statute unconstitutional." *Id.* at ¶11, citing *Krug* at ¶24.

{¶46} Since the date of the offense preceded the enactment of the amended statute, Ms. McEndree would not have been able to take advantage of the change even if the court had delayed her trial.

{¶47} Ms. McEndree's first assignment of error is without merit.

### *Batson* Challenge

{¶48} In her second assignment of error, Ms. McEndree asserts the trial court prejudicially allowed the state to strike a female juror without a plausible, gender neutral explanation.

{¶49} In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the Supreme Court of the United States held that a prosecutor's racially motivated exercise of preemptory challenges violated the Equal Protection Clause of the Fourteenth Amendment. *State v. Holder*, 11th Dist. Geauga Nos. 2001-G-2345 & 2001-G-2350, 2002-Ohio-7124, ¶40, citing *Batson* at 89. *Batson* has also been extended to prohibit preemptory strikes based on gender. *Id.*, citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127(1994), at syllabus. As

14

the Fourteenth Amendment protects the rights of prospective jurors to be free from discriminatory challenges, the exercise of even one peremptory challenge in a purposefully discriminatory manner violates equal protection. *Id., citing State v. Gowdy*, 88 Ohio St.3d 387, 393 (2000). A trial court's findings of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous. (Citation omitted.) *Id.*

{¶50} There is a three-part process for proving a *Batson* violation. *Id.* at ¶41. First, a party must establish a prima facie case of discriminatory purpose, which can be done by pointing to a pattern of challenges against a particular race or gender. *Id*. Second, if a prima facie case is established, the burden of production then shifts to the proponent of the strike to come forward with a race or gender-neutral explanation. *Id*. Third, and finally, if a race or gender-neutral explanation is tendered, the trial court must decide whether the opponent of the strike has proved purposeful discrimination. *Id.*, citing *Gowdy* at 392-93.

{¶51} A review of the transcript reveals that the state used only two of its four peremptory challenges, electing to strike first, a male, and then second, the female juror at issue. Immediately upon exercising its second challenge on the female juror, defense counsel asked the state "to provide a gender neutral reason for excusing her." After disagreeing about the analysis of *Batson*, the state provided a gender neutral reason for striking the potential female juror: "Frankly – and I'll be very frank. The reason for the State's peremptory is because we believe [the juror] was not truthful in the courtroom. Because on her application she indicated she suffered from rheumatoid arthritis. And when we asked her in open court what medical conditions, if there's anybody that had

15

some serious medical conditions, that she didn't note that.  So we were concerned frankly for her - - ."

{¶52}  After inquiring if defense counsel wished to be heard further on their objection, the court determined:  "Okay.  I'm looking down the list.  So currently there are three women I think on the panel.  And the only other woman who was on the panel who's been excused was excused by the Defense.  So I'm gonna overrule this objection to the challenge.  I think the State can fairly excuse [the juror] on a peremptory challenge."

{¶53}  After this female juror was excused, the final jury included three women and two female alternates.  Prior to the peremptory challenges, the record reflects the state raised approximately 13 jurors to strike for cause, with approximately half male and half female.  All of the state's explanations were gender neutral on their faces and otherwise supported by the transcript.

{¶54}  Ms. McEndree cites the Seventh District Court of Appeals' holding in *State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, in support of the proposition that "the use of a peremptory challenge to exclude a single prospective juror, without more, can establish a prima facie cause of discrimination."  While this is an accurate statement of the law, it has no bearing on the present case.

{¶55}  In *Barker*, the Seventh District found that the appellant, who was African American, had met his burden of making a prima facie case of discrimination in that the state wished to exercise its peremptory challenge to excuse the only African-American juror, and as such, the prosecutor's use of a peremptory challenge to excuse the juror could be viewed as discriminatory.  *Id.* at ¶18.  As in the present case, however, the prosecutor put forth a valid, neutral explanation for excusing the juror that was reasonable

16

and understandable. *Id.* at ¶19-20. For similar reasons, we cannot conclude that the trial court's finding of no discrimination was clearly erroneous.

{¶56} Ms. McEndree's second assignment of error is without merit.

## Ineffective Assistance of Counsel

{¶57} In her third assignment of error, Ms. McEndree contends her trial counsel provided ineffective assistance in failing to request jury instructions on BWS, self-defense, and voluntary manslaughter, and in failing to insist on a verdict in the instructions for involuntary manslaughter, or, in other words, agreeing that the jury would be instructed that it could not render an involuntary manslaughter verdict unless it found the defendant not guilty of murder.

{¶58} To establish a claim of ineffective assistance of counsel, Ms. McEndree must demonstrate (1) her counsel was deficient in some aspect of her representation, and (2) there is a reasonable probability, were it not for counsel's errors, the result of the proceedings would have been different. *State v. Hope*, 11th Dist. Trumbull No. 2018-T-0053, 2019-Ohio-2174, ¶88, citing *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

{¶59} A threshold issue in a claim of ineffective assistance of counsel is whether there was actual error on the part of trial counsel. *Id.* at ¶89, citing *State v. McCaleb*, 11th Dist. Lake No. 2002-L-157, 2004-Ohio-5940, ¶92. In Ohio, every properly licensed attorney is presumed to be competent, and therefore a defendant bears the burden of proof. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice

17

arises from counsel's performance." *Id.,* quoting *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989).

{¶60} Furthermore, decisions on strategy and trial tactics are generally granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers. *Id.* at ¶90, citing *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶35, citing *Strickland* at 689. Debatable trial tactics generally do not constitute ineffective assistance of counsel. *Id.*, citing *State v. Philips*, 74 Ohio St.3d 72, 85 (1995).

{¶61} "[T]here can be no such thing as an error-fee, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Sands*, 11th Dist. Lake No. 2007-L-003, 2008-Ohio-6981, ¶133, quoting *United States v. Hastings*, 461 U.S. 499, 508-509 (1983). Effective assistance of counsel does not guarantee results. *State v. Longo*, 4 Ohio App.3d 136, 139 (8th Dist.1982).

### Jury Instructions

{¶62} Ms. McEndree argues her counsel was further ineffective in failing to request a jury instruction on BWS, self-defense, and voluntary manslaughter.

{¶63} Requested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury. (Citations omitted.) *State v. Jordan*, 11th Dist. Lake No. 2009-L-006, 2009-Ohio-6152, ¶32.

### BWS Instruction

{¶64} Ms. McEndree first asserts that her trial counsel provided ineffective assistance because they failed to request a specific jury instruction on BWS.

18

{¶65} "Pursuant to Crim.R. 30(A), the failure to object to a jury instruction in a timely manner generally constitutes a waiver of any claimed error relative to the instructions." (Citations omitted.) *Buckley* at ¶30, quoting *State v. Reeds*, 11th Dist. Lake No. 2007-L-120, 2008-Ohio-1781, ¶35. "Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court." (Citations omitted.) *Id.*

{¶66} "In the context of a criminal case, a court of review should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." (Citations omitted.) *Id.* at ¶31, quoting *Reeds* at ¶36; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶67} "Thus, plain error does not exist unless, but for the error, the outcome of the proceedings would have been different." (Citations omitted.) *Id.*; *Long* at paragraph two of the syllabus.

{¶68} "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." (Citations omitted.) *Id.* at ¶32, quoting *Reeds* at ¶37.

{¶69} Errors in a court's jury instructions must not be examined in isolation but rather must be viewed in the context of the overall charge. *State v. Eng*, 2d Dist. Montgomery No. 14015, 1994 WL 543277, *4 (Sept. 30, 1994), citing *State v. Barnd*, 85 Ohio App.3d 254 (3d Dist.1993). Further, "[i]n determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in relation to, and as it

19

affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results." *Id.*, quoting *State v. Hardy*, 28 Ohio St.2d 89, 92 (1971).

{¶70} Jury instructions must contain "all matters of law necessary for the information of the jury in giving its verdict." R.C. 2945.11. The trial court should instruct the jury if the proposed instruction is a correct statement of law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991).

{¶71} R.C. 2945.392(B), which governs "battered woman syndrome," specifically states that "[i]f a defendant is charged with an offense involving the use of force against another and the defendant enters a plea to the charge of not guilty by reason of insanity*, the defendant may introduce expert testimony of the 'battered woman syndrome' and expert testimony that the defendant suffered from that syndrome as evidence* to establish the requisite impairment of the defendant's reason, at the time of the commission of the offense, that is necessary for a finding that the defendant is not guilty by reason of insanity." (Emphasis added.)

{¶72} The admission of expert testimony as to BWS "does not establish a new defense or justification." *State v. Koss*, 49 Ohio St.3d 213, 217 (1990). It is expert opinion evidence offered to assist the trier of fact in determining whether the defendant has established the "requisite impairment of the defendant's reason, at the time of the commission of the offense, that is necessary for a finding that the defendant is not guilty by reason of insanity." R.C. 2945.392(B). Thus, inasmuch as BWS is not a separate

defense, nor is it a necessary element the jury must find to determine whether the defendant is insane, the failure to request the standard BWS jury instruction does not, standing alone, constitute plain error or ineffective assistance of counsel.

{¶73} Ms. McEndree was properly permitted to use evidence of BWS with regard to the issue of her sanity at the time of the commission of the offense. Defense counsel presented and the jury heard extensive expert testimony from Dr. Boyd, including his testimony that while it is not a formal diagnosis, BWS is recognized by Ohio courts as a syndrome. Dr. Boyd also opined that, at the time of the shooting, she was insane and did not know the difference between right and wrong.

{¶74} The state's expert, Dr. Gazley, agreed BWS is not a formal diagnosis and agreed with the defense expert that it is recognized by Ohio courts. Further, he opined that Ms. McEndree showed signs consistent with BWS and that she was "very likely a battered woman," even though he was not of the opinion that she suffered from battered woman syndrome.

{¶75} During strong closing arguments, defense counsel spoke at length about how BWS contributed to Ms. McEndree's insanity along with the competing theory that she did not kill him purposefully but rather accidentally. Defense counsel argued that "[t]he impulse was to take the gun to use as a threat, not to harm."

{¶76} The trial court accurately instructed the jury on the insanity defense and that "[a] person is insane and not responsible for criminal conduct if at the time of her act or acts A) she had a severe mental disease or defect, and B) as a result she did not know the wrongfulness of her acts or acts."

{¶77} Thus, we cannot say defense counsel was ineffective simply because they made the strategic decision not to request a specific jury instruction on BWS itself when there was no confusion as to whether BWS is recognized by Ohio courts or confusion as to the defense theory that BWS contributed to Ms. McEndree's insanity at the time of the offense. Moreover, the jury was properly instructed on the affirmative defense of not guilty by reason of insanity. Simply put, while a requested instruction on BWS would have been appropriate in this case, we cannot find plain error, since Ms. McEndree has not demonstrated there is a reasonable probability, were it not for counsel's error, the result of the proceedings would have been different.

{¶78} "[C]ounsel's decision not to request a jury instruction falls within the ambit of trial strategy." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶111. Furthermore, debatable trial tactics do not constitute ineffective assistance of trial counsel. (Citations omitted.) *Id.*

{¶79} Ms. McEndree's assertion that trial counsel was ineffective for failing to request a specific jury instruction on BWS is without merit.

### *Voluntary Manslaughter*

{¶80} Ms. McEndree next argues her trial counsel was ineffective in failing to request a jury instruction on voluntary manslaughter. This case, however, does not support an acquittal on the aggravated murder charge and a conviction of voluntary manslaughter.

{¶81} R.C. 2903.03(A), which defines "voluntary manslaughter," states "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably

22

sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *."

{¶82} Voluntary manslaughter is considered an inferior-degree offense to aggravated murder. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶80, citing *State v. Benge*, 75 Ohio St.3d 136, 140 (1996).

{¶83} "Before giving an instruction on voluntary manslaughter in a murder case, the trial court must determine 'whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction.'" *Id.* at ¶81, quoting *State v. Shane*, 63 Ohio St.3d 630 (1992), paragraph one of the syllabus. "In making that determination, trial courts must apply an objective standard: 'For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *Id.*, quoting *Shane* at 635.

{¶84} Ms. McEndree's trial counsel could not have been deficient in failing to request a jury instruction on voluntary manslaughter when there was no evidence of provocation. In her recorded confession with the police, Ms. McEndree was asked if she took the gun in anger. Ms. McEndree replied she did not; she just wanted to end it. She also told the police the victim had pulled her hair and wanted to do drugs. Mr. McCann's actions did not provide sufficient provocation to warrant an instruction on voluntary manslaughter. Further, there was no evidence that Mr. McCann was the aggressor. Ms. McEndree told the police that she stole the gun from her neighbor because she had "had enough;" she was not angry but was "used to" the abuse. She then rode her bicycle back to the house and shot Mr. McCann on sight.

23

{¶85} Thus, the evidence shows that when Ms. McEndree killed Mr. McCann, she was not under the influence of sudden passion or in a sudden fit of rage. Thus, in *Elmore*, *supra*, similarly to Ms. McEndree, the appellant did not provide sufficient provocation to warrant an instruction on voluntary manslaughter, and there was no evidence that the victim was the aggressor. *Id.* at ¶83-85. Likewise in *State v. Lee*, 10th Dist. Franklin No. 04AP-234, 2004-Ohio-6834, trial counsel was not deficient in failing to request a jury instruction on voluntary manslaughter, considering that the evidence at trial did not support a finding that defendant acted under the influence of sudden passion or in a sudden fit of rage. *Id.* at ¶23. In *State v. Handwork*, 11th Dist. Portage No. 2002-P-0134, 2004-Ohio-6181, we found the jury's verdict convicting appellant of murder rather than voluntary manslaughter was not against the manifest weight of the evidence because appellant told investigators, when asked if he was angry, that he was "not angry, but scared." *Id.* at ¶84. The Fifth District aptly explained in *State v. Byerly*, 5th Dist. Richland No. 02-CA-081, 2003-Ohio-6911, that the interval between the provocation and the fatal blow must be so close in time that the defendant had no time to "cool off." *Id.* at ¶35, citing *Shane*. Because there was absolutely no evidence that the defendant was under the influence of sudden passion or in a sudden fit of rage, there was no evidence adduced at trial which would allow the jury to reasonably reject the greater offense of aggravated murder and find defendant guilty of the lesser offense of voluntary manslaughter. *Id.* at ¶38-41.

{¶86} Furthermore, the Supreme Court of Ohio has stated that the "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not

24

establish ineffective assistance of counsel," especially where, as here, the evidence does not support such an instruction. *State v. Griffie*, 74 Ohio St.3d 332, 333 (1996).

{¶87} Ms. McEndree's argument that trial counsel provided ineffective assistance for not requesting a jury instruction on voluntary manslaughter is without merit.

### Self-Defense

{¶88} Ms. McEndree next argues her trial counsel provided ineffective assistance for failing to request a jury instruction on self-defense. For similar reasons, i.e., because the evidence adduced at trial does not support that Ms. McEndree acted in self-defense, trial counsel could not have been deficient in failing to request such an instruction.

{¶89} "In determining whether a self-defense jury instruction is warranted, we look to 'whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'" *Imondi, supra,* at ¶17, quoting *State v. Melchior*, 56 Ohio St.2d 15 (1978), paragraph one of the syllabus.

{¶90} The common law elements of self-defense are the same regardless of the applicability of R.C. 2901.05(B)(1), which, as discussed in Ms. McEndree's first assignment of error, shifted the burden of proof from a defendant having to prove self-defense by a preponderance of the evidence to the state having to disprove the same beyond a reasonable doubt. Thus, prior to March 28, 2019, a defendant who attempted to invoke self-defense was required to prove (1) she was not at fault for creating the situation; (2) she had a bona fide belief she was in imminent danger; (3) she did not violate a duty to retreat; and (4) the force used was necessary. *Buckley* at ¶34, citing *Imondi* at ¶18.

25

{¶91} We cannot say Ms. McEndree's counsel was ineffective in failing to request a jury instruction on self-defense when, by Ms. McEndree's own admissions during her recorded police interview, she admitted she created the situation, was not in imminent danger, was the primary aggressor, and shot Mr. McCann in cold blood. Ms. McEndree told the police that she argued with Mr. McCann because she did not want to do drugs and that he pulled her hair. She also gave conflicting statements to different police officers about Mr. McCann allegedly breaking a vase over her head. In one statement, she claimed Mr. McCann had done so over a month ago; in another, she claimed the incident happened the night before. After arguing with Mr. McCann, she left her home, and instead of seeking assistance or calling the police, she stole her neighbor's gun. Ms. McEndree told the police she was not angry, but rather she was done; she had "had it." Ms. McEndree then returned to her home, and without any provocation from Mr. McCann, shot him twice at close range.

{¶92} Further, we cannot say that as a matter of trial strategy, counsel choosing between a self-defense strategy and an insanity defense was not appropriate, particularly when this court has determined that self-defense presumes an intentional act. *State v. Kiehl*, 11th Dist. Portage No. 2015-P-0020, 2016-Ohio-8543, ¶31. As noted in *Kiehl*, arguing both to a jury would be "'similar to a person saying in one breath, 'I was insane at the time of the homicide,' and in the next breath, 'I shot in the exercise of my right of self-defense, with reasonable grounds therefor, as they appeared to me.'" *Id.*, quoting *State v. Champion*, 109 Ohio St. 281, 287 (1924).

{¶93} Ms. McEndree's argument that trial counsel was ineffective for failing to request a jury instruction on self-defense is without merit.

### *Verdict on Involuntary Manslaughter*

{¶94} Ms. McEndree next alleges her trial counsel provided ineffective assistance by agreeing that the jury would be instructed that it could not render an involuntary manslaughter verdict unless it found the defendant not guilty of murder since doing so precluded inconsistent verdicts. She also raises this argument in her fourth assignment of error, contending that the trial court erred for the same reason, that is, by precluding a finding of involuntary manslaughter unless the jury also found Ms. McEndree "not guilty" on count 3 (murder). Thus, we will address these arguments together.

{¶95} A review of the transcript reveals Ms. McEndree's assertions are incorrect and that the trial court properly instructed the jury on count 3 (murder) and on the lesser included offense of involuntary manslaughter.

{¶96} In *State v. Thomas*, 40 Ohio St.3d 213 (1988), the Supreme Court of Ohio held that "[a] jury must unanimously agree that the defendant is guilty of a particular criminal offense before returning a verdict of guilty on that offense. If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense." *Id.* at paragraph three of the syllabus.

{¶97} The trial court, following *Thomas*, did not instruct the jury that it "could not render a verdict on Involuntary Manslaughter unless it already found Appellant not guilty of Murder." Rather, the court instructed the jury as follows:

27

{¶98} "As to Count 3, if you find the State has failed to prove beyond a reasonable doubt all the essential elements of murder, your verdict must be not guilty of that offense, and in that event you should continue your deliberations to determine the Defendant's guilt or innocence with respect to the lesser included offense of involuntary manslaughter. *If you are unable to agree that the Defendant is either guilty or not guilty of the crime of murder, then in that event you should continue your deliberations to determine the Defendant's guilt or innocence with respect to the lesser offense of involuntary manslaughter.*" (Emphasis added.)

{¶99} As the plain reading of the court's instructions demonstrates, the trial court did not prohibit a finding on involuntary manslaughter unless there was a "not guilty" verdict on Count 3 (murder). Thus, there is no error, either on the part of the trial court or counsel.

{¶100} Ms. McEndree's argument that the jury was not allowed to render inconsistent verdicts is without merit.

{¶101} Ms. McEndree's third and fourth assignments of error are without merit.

### The State's Expert Witness

{¶102} In her fifth assignment of error, Ms. McEndree asserts she was denied due process of law under the United States and Ohio Constitutions because the state's expert witness, Dr. Gazley, "attacked" BWS as a viable defense under Ohio law and that allowing this testimony constituted prosecutorial misconduct.

{¶103} "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." (Citations omitted.) *Hope* at ¶132. The focus is "the fairness of the trial, not the culpability of the

28

prosecutor." (Citations omitted.) *Id.* Thus, prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that a defendant is deprived of a fair trial. (Citation omitted.) *Id.*

{¶104} First, as noted above, pursuant to R.C. 2945.392(B), the defendant may introduce expert testimony that he or she suffered from BWS as evidence to establish the "requisite impairment at the time of the offense." Thus, as previously noted, the Supreme Court of Ohio "[did] not establish a new defense or justification' in allowing the admission of expert testimony regarding battered-woman syndrome for the first time in *State v. Koss*[,] [*supra*] * * *. Rather, [the Supreme Court of Ohio] held that expert testimony on battered-woman syndrome is admissible as evidence to prove one element of self-defense." *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶35. Thus, such evidence is equally admissible to support an insanity defense.

{¶105} Second, the state was permitted to have their own expert testify as to BWS and whether Ms. McEndree suffered from BWS at the time of the offense. In *Goff*, the Supreme Court of Ohio went on to hold that "[b]y putting her mental state directly at issue and introducing expert testimony based upon her own statements to the expert, the defendant opens the door to a limited examination by the state's expert concerning battered-woman syndrome and its effect on the defendant's behavior. Courts have the inherent authority to preserve fairness in the trial process, and allowing the defendant to present expert testimony on the specific effects of battered-woman syndrome on the defendant while denying the prosecution the ability to introduce such evidence would unfairly handicap the prosecution and prevent the trier of fact from making an informed decision." *Id.* at ¶58.

{¶106} A review of the testimony of the state's expert, Dr. Gazley, reveals he explained BWS, stating that it was a legally recognized syndrome in the state of Ohio, but that it is not recognized "in the clinical psychology classification." He also opined one can be a battered woman but not suffer from BWS. He explained whether an individual suffers from BWS depends on the individual and the traumatic series of events. It does not always end in the "syndrome cluster" known as BWS. Although Dr. Gazley believed Ms. McEndree was a "severely abused woman," he did not feel she exhibited the characteristics BWS because she did not demonstrate learned helplessness and she still had the capacity to think rationally, make informed decisions, and utilize her rational thinking.

{¶107} The state was permitted to present their expert testimony on BWS and whether it affected Ms. McEndree and her sanity at the time of the offense. "The paramount concern of fairness of the trial requires only that the state be given the same opportunity to present testimony on battered-woman syndrome as the defendant." *Goff* at ¶59.

{¶108} Ms. McEndree's fifth assignment of error is without merit.

**Ineffective Assistance of Counsel Due to the State's Expert Testimony**

{¶109} In her sixth assignment of error, Ms. McEndree contends her trial counsel provided ineffective assistance because they did not object to the state's expert testimony. Because we separately addressed the underlying grounds for this issue in our disposition of her fifth assignment of error and found it to be without merit, Ms. McEndree's claim of ineffective assistance of counsel based upon the same grounds is likewise without merit. *See Buckley* at ¶78, citing *State v. Henderson,* 39 Ohio St.3d 24, 33 (1988)

30

("The ground which underlie each of these instances have already been separately addressed and found to be without merit. Accordingly, we need not address the counsel-performance component of these grounds"); *State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003-Ohio-4338, ¶64.

{¶110} Ms. McEndree's sixth assignment of error is without merit.

**Manifest Weight of the Evidence**

{¶111} In her seventh and final assignment of error, Ms. McEndree contends the manifest weight of the evidence did not support her conviction because the state's expert, Dr. Gazley, biased the jury against consideration of BWS and cast doubt on her defense.

{¶112} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. (Citations omitted.) *Buckley* at ¶61. *See also State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶113} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * * The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. * * * The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and credibility of witnesses." (Citations omitted.) *Id.* at ¶62.

{¶114} As noted in our disposition of Ms. McEndree's fifth assignment of error, there was nothing untoward about Dr. Gazley's expert testimony. Dr. Gazley testified as

to what tests and measurements he used to assess Ms. McEndree's sanity, gave an accurate explanation of BWS, and opined as to whether he believed Ms. McEndree suffered from BWS and to her sanity at the time of the offense.  This was no different from Dr. Boyd's expert testimony, albeit he based his opinion on different tests and measurements.  Both experts were aware of and testified to the other's evaluations and reports.

{¶115} "It is well settled that when assessing the credibility of witnesses, '[t]he choice between the credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'   * * * Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." (Citations omitted.)  *Id.* at ¶65.

{¶116} Ms. McEndree's seventh assignment of error is without merit.

{¶117} The judgment of the Ashtabula Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

32